**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| NICHOLAS HECKFORD, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-4366 |
| | § | |
| CITY OF PASADENA, | § | |
| | § | |
| MARK BRINKER, in his individual and | § | |
| official capacity, | § | Jury Trial Demanded |
| | § | |
| JOHN DOE 1-10, unknown City of | § | |
| Pasadena Police Department officers, in | § | |
| their individual and official capacities, | § | |
| | § | |
| CHIEF JOSH BRUEGGER, in his official | § | |
| capacity, | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **NICHOLAS HECKFORD** (hereinafter referred to as "Plaintiff"), filing this Original Complaint against Defendants, **CITY OF PASADENA**, **MARK BRINKER**, in his individual and official capacity, **JOHN DOE 1-10**, unknown police officers employed by the City of Pasadena through its Police Department, in their individual and official capacities, **CHIEF JOSH BRUEGGER**, in his official capacity (hereinafter collectively known as the "Defendants"). In support of his cause of action, Plaintiff would show as follows:

## I.    STATEMENT OF THE CASE

1.    This is an action for damages brought under 42 U.S.C. § 1983 against the Defendants.  At all times relevant, Defendants Mark Brinker and John Doe 1-10 (hereinafter

collectively the "Officers") were police officers employed with Defendant City of Pasadena's Police Department (the "PPD").

2.     On or about December 27, 2018, the Officers either applied unreasonable, unconstitutionally excessive force against Plaintiff or failed to intervene as required by law (hereinafter referred to as the "Incident").

3.     As a result of the attack, Plaintiff suffered severe and grotesque injuries, including but limited to a fractured orbital bone.  *See* Exhibit "1" (images of inflicted injuries).

4.     The PPD's policies, customs and practices, including, but not limited to, the failure to train and supervise the Officers and/or whose toleration of illegal police conduct, resulted in the use of excessive force upon, the unlawful seizure of, and the injuries inflicted upon Plaintiff. Additionally, Defendant City of Pasadena and Defendant Bruegger ratified the conduct of the Officers.

5.     Plaintiff seeks monetary damages (special, compensatory, and punitive) under 42 U.S.C. § 1983 and state law for the injuries and damages sustained as a result of Defendants' wrongful conduct.  Plaintiff further seeks reasonable and necessary attorneys' fees and costs and expenses against the Defendants under 42 U.S.C. § 1988.

## II.     JURISDICTION AND VENUE

6.     This action is brought pursuant to 42 U.S.C. §1983 and §1988 and the Fourth Amendment to the United States Constitution, made applicable to the Defendants through the Fourteenth Amendment to the United States Constitution.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, and 42 U.S.C. § 1988.  Venue is proper in this Court pursuant to § 1391(b) because the incident in question took place in Harris County, Texas, within the United States Southern District of Texas.

### III.    PARTIES

7.      Plaintiff Nicholas Heckford is an individual and a resident of the State of Texas.

8.      The **CITY OF PASADENA** (or "the City") is a municipal corporation organized under the laws of the State of Texas. At all times relevant hereto, the City, through the Pasadena Police Department (or "PPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all PPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all PPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the PPD, and for ensuring that the PPD personnel obey the laws of the United States and the State of Texas. The City may be served with process at 1149 Ellsworth Drive, Pasadena, TX 77506.

9.      The Defendant, **MARK BRINKER** ("Defendant Brinker"), is being sued in his individual and official capacity. He was as of December 27, 2018, employed as a police officer with the PPD.  Defendant Brinker participated in the Incident. Upon information and belief, he may be served with process at his place of employment as a police officer at 1201 Davis Street, Pasadena, TX 77506 or wherever he may be found.

10.     The Defendants, **JOHN DOE 1-10**, individuals whose names are currently unknown to Plaintiff, were as of December 27, 2018 employed as police officers by the City, and are being sued in their individual and official capacity.  These police officers either participated in the Incident or failed to intervene. These police officers collectively with Defendant Brinker hereinafter referred to as the "Officers."

11.     The Defendant, **CHIEF JOSH BRUEGGER**, is being sued in his official capacity. At all times here relevant, Defendant Bruegger was responsible for enforcing the rules of the PPD, and for ensuring that the PPD personnel obey the laws of the United States and the State of Texas.

Additionally, he was responsible for the appointment, training, supervision, discipline and retention and conduct of all PPD personnel. Upon information and belief, he may be served with process at his place of employment with the PPD at 1201 Davis Street, Pasadena, TX 77506 or wherever he may be found.

## IV.    NOTICE OF CLAIM

12.    In compliance with Texas Civil Practice & Remedies Code §101.101(a), Plaintiff submitted a written Notice of Claim with the proper governmental unit less than six months after the day that the incident giving rise to the underlying claim occurred.

## V.    <u>BACKGROUND AND FACTS</u>

13.    On or around December 27, 2018, Plaintiff was allegedly involved in a non-violent incident at the Denny's Restaurant located at 4125 Spencer Hwy, Pasadena, Texas 77504 (hereinafter the "Denny's").

14.    Shortly after leaving the Denny's, Plaintiff called the Denny's in the hopes of remedying the situation and making things right.

15.    A Denny's employee answered the phone and Plaintiff asked her if he could speak with the manager.  Instead, she gave the phone to Defendant Brinker while stating, "the idiot actually called. He's on the phone right now." Defendant Brinker then proceeded to impersonate the manager of Denny's.

16.    Plaintiff expressed his regret over how the prior events transpired.  When the purported manager informed Plaintiff that a window had suffered some minor damage, Plaintiff offered to return the Denny's to pay for the costs associated with any such damage in order to make things right.

17.     Meanwhile, the "manager" assured Plaintiff that charges would not be pressed if he simply returned to the Denny's and paid for the window.

18.     Defendant Brinker thoroughly enjoyed every moment while waiting for Plaintiff to return as he walked back and forth boasting to anyone and everyone who would listen about how he had tricked Plaintiff and that "I'm gonna (sic) laugh if he really does come back." And, that "surely, [Plaintiff] ain't that dumb" to actually return in an effort to make things right.

19.     A couple minutes later, the purported "manager" called Plaintiff back and left a voicemail urging him to return to the Denny's. When Plaintiff promptly called back, he asked where Plaintiff was and threatened to call the police if Plaintiff did not return to the Denny's. Plaintiff informed him that he was already on his way and almost there.

20.     A few moments later, despite seeing several police vehicles already present at the Denny's, Plaintiff pulled into the parking lot and parked his vehicle.

21.     As soon as he parked, Plaintiff opened his car door and placed his left leg outside of the car in order to exit however by that time, several of the Officers charged at him and yelled orders for him to get out of the car.  Plaintiff was aggressively grabbed, struck and pulled by at least three of the Officers.  In response, Plaintiff desperately pled, "will y'all let me get out of the car?" The Officers then proceeded to violently beat Plaintiff, which included the Officers striking him in the head and face.  Plaintiff was then dragged out of the vehicle and brutally slammed face first on to the concrete surface of the parking lot which immediately caused a pool of blood to begin pouring out of Plaintiff's face.

22.     PPD's policies in effect at the time provided as follows:

"10.3 PROCEDURES… 1) Use of Force… a) Officers may use only that level of force that is objectively reasonable to bring an incident under control… b) Officers are authorized to use force… when one or more of the following apply: (i) To protect the officer or others from physical harm. (ii) To restrain or subdue a resistant individual. (iii)

To bring an unstable, threatening, or unlawful situation safely and effectively under control." *See* Exhibit "2" Pg. 1.

23.    While Plaintiff laid, helpless on the concrete floor, multiple officers aggressively pinned him to the ground including one who forcefully pressed his knee against Plaintiff's neck thereby cutting off his oxygen circulation and causing him to cry out in desperation that he could not breathe.  By the end of it, the Officers participated in the assault and/or witnessed it but did not intervene.  As a result, Plaintiff suffered serious egregious and unnecessary injuries.  *See* Exhibit "1" (images of inflicted injuries).

24.    PPD's policies in effect at the time provided as follows:

"4) Duty to Intervene… a) any officer present and observing another officer using force that is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, intervene to prevent the use of such force. b) Officers shall promptly report these observations to a supervisor" *See* Exhibit "2" Pg. 4.

25.    Nonetheless, as Plaintiff lay on the pavement pleading for the Officers to stop Defendant Brinker asked, "Who did you talk to here?" Plaintiff replied, "the manager" to which that Defendant Brinker boasted, "what was his name? Was it Brinker? Because that's me. Welcome back."

26.    PPD's policies in effect at the time also provided as follows:

"2.24 TRUTHFULNESS… Officers are required to speak the truth at all times whether under oath or not, in giving testimony, in connection with any lawful order received or unless necessary to accomplish a legitimate police mission."  *See* Exhibit "2" Pg. 3.

27.    In 2019, Plaintiff filed an official complaint with the City.  On or around July 1, 2019, this was acknowledged as received by the Office of Internal Affairs.  *See* Exhibit "3".  The response letter assured that, a complete investigation would be conducted, and was signed "Sincerely, J.A. Bruegger [/] Chief of Police," in other words, Defendant Bruegger.

28.     On or around October 14, 2019, Defendant Bruegger wrote to the Plaintiff as follows:

> "An investigation has been conducted by this department concerning the complaint received from you. A thorough examination and evaluation of the evidence assembled has shown that the action of the concerned employees under these circumstances was not a violation of law or departmental policy." *See* Exhibit "4."

29.     However, the Officer Defendants violated several laws and department policies. Accordingly, Defendants Bruegger and the City of Pasadena ratified the conduct of its officers and is liable for doing so.

## VI.     CAUSE OF ACTION

### A.     EXCESSIVE FORCE

30.     Plaintiff incorporates the above paragraphs as if fully set forth herein.

31.     To prevail on an excessive force claim, Plaintiff must show (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Darden v. City of Fort Worth*, 800 F.3d 722, 727 (5th Cir.), *cert denied*, 139 S. Ct. 69 (2018).

32.     Here, Plaintiff suffered egregious injuries. *See* Exhibit "1." Those injuries directly and only resulted from the use of force that was clearly excessive by the Officers. The excessiveness of the force used by the Officers was clearly unreasonable.

### B.     FAILURE TO INTERVENE

33.     Plaintiff incorporates the above paragraphs as if fully set forth herein.

34.     An officer may also be liable under § 1983 where the officer (1) knows that a fellow officer is violating an individual's constitutional rights, (2) has a reasonable opportunity to prevent harm, and (3) chooses not to act. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

35.     Here, Defendants John Doe 1-10 knew that Defendant Brinker and the other Defendants John Doe 1-10 were police officers violating Plaintiff's constitutional rights. Defendants John Doe 1-10 had a reasonable opportunity to prevent harm, and chose not to act.

### C.     FAILURE TO TRAIN / SUPERVISE

36.     Plaintiff incorporates the above paragraphs as if fully set forth herein.

37.     To hold a supervisory official liable for failure to train or supervise, the plaintiff need only show that (1) the supervisor either failed to supervise or train the subordinate official, (2) a causal link exists between the failure to train and the violation of the plaintiff's rights, (3) the failure to train or supervise amounts to deliberate indifference. _Smith v. Brenoettsy_, 158 F.3d 908, 811-12 (5th Cir. 1998).

38.      Here, Defendant Bruegger and the City through the PPD failed to supervise or train the Officers.  A causal link between this failure to train or supervise resulted in the violation of the Plaintiff's rights.  That failure to train or supervise amounts to deliberate indifference.

### D.     RATIFICATION

39.     Plaintiff incorporates the above paragraphs as if fully set forth herein.

40.     The U.S. Supreme Court has held that, "[i]f the authorized policymakers approve of a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."  _City of St. Louis v. Praprotnik_, 485 U.S. 112, 127 (1988); s_ee also Grandstaff v. City of Borger_, 767, F. 2d 161 (1985) (noting the "disposition of the policy maker may be inferred from his conduct after the events of that night")

41.      Here, Defendant Bruegger and the City through the PPD ratified the conduct of the Officers.  Following their incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error.   Upon information and belief, there have also been no

changes made to the policies.  If that episode of such recklessness obtained such little attention and action by Defendant Bruegger and the City, the jury should be entitled to conclude that it was accepted as the way things are done and have been done in the City.  If prior policy had been violated, we would expect to see a different reaction.  If what the Officers did and failed to do on December 27, 2018 was not acceptable to the police chief, changes would have been made.

42.     This reaction to so gross an abuse of the use of force says more about the existing disposition of the Defendant Bruegger and the City's policymaker than would a dozen incidents where individual officers employed excessive force.  The policymaker's disposition, his policy on the use of deadly force, after on December 27, 2018 was evidence of his disposition prior to on December 27, 2018.  *See* Wigmore, Evidence §§ 382, 437 (Chadbourn rev. 1979).  As subsequent conduct may prove discriminatory motive in a prior employment decision, see *McNonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 26 L.Ed.2d 668 (1973), and subsequent acts may tend to prove the nature of a prior conspiracy, see *Anderson v. United States*, 417 U.S. 211, 219, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974), so the subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy.

E.     **POLICY CLAIM**

43.     Plaintiff incorporates the above paragraphs as if fully set forth herein.

44.     A municipality can be held liable under § 1983.  *City of Canton v. Harris*, 109 S. Ct. 1197, 1203 (1989); *Monell v. Dept. of Soc. Servs.*, 98 S. Ct. 2018, 2037-38 (1978).  Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy or custom of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.  *Pineda v. City of Houston*, 291 F.3d 325,

328 (5th Cir. 2002).   There are several relevant written policies; but it is not the custom of Defendant Bruegger and the City to enforce those policies.

45.      The first policy is on truthfulness. It provides, "2.24 TRUTHFULNESS… Officers are required to speak the truth at all times whether under oath or not, in giving testimony, in connection with any lawful order received or ***unless necessary to accomplish a legitimate police mission***." *See* Exhibit "2" Pg. 3 (emphasis added).   Here, although Plaintiff himself voluntarily called the Denny's and offered to return to make things right, Defendant Mark Brinker saw this as an opportunity to feed his own misplaced ego.   Rather than embodying the mantra of "Serve and Protect" he was more worried about how he looked in front of his colleagues.

46.      Defendant Brinker deliberately turned a blind eye to the blatantly obvious, that Plaintiff was not "dumb" for returning but genuinely remorseful for how the prior events transpired and therefore sought to remedy it in a civil manner. Defendant Brinker instead lied and impersonated Denny's manager in order to set up Plaintiff so the Officers could ambush him with a force of at least 10 police officers.

47.      Here, Defendant Mark Brinker, had the Plaintiff's name, phone number, vehicle description and license plate number, video footage from security footage and witness testimony who could easily identify him.   Therefore, even if Plaintiff did not voluntarily return, which he did, there was no need to ambush and attack him under false pretenses.

48.      The second policy is the duty to intervene and it is also customary to not enforce it. This policy states, in part, "4) Duty to Intervene… a) any officer present and observing another officer using force that is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, intervene to prevent the use of such force. b)

Officers shall promptly report these observations to a supervisor" *See* Exhibit "2" Pg. 4.  While this policy is on the books, it is not the custom of Defendant Bruegger and the PPD to enforce it.

49.     The third policy is the Use of Force procedures, which although written it is not the custom to enforce it.  It provides, "10.3 PROCEDURES… 1) Use of Force… a) Officers may use only that level of force that is objectively reasonable to bring an incident under control… b) Officers are authorized to use force… when one or more of the following apply: (i) To protect the officer or others from physical harm (ii) To restrain or subdue a resistant individual. (iii) To bring an unstable, threatening, or unlawful situation safely and effectively under control." *See* Exhibit "2" Pg. 1.   Here, the Officers used force that was not objectively reasonable to bring an incident under control.  They, quite literally, "ganged up" on Plaintiff and attacked him in a calculated effort before he even had an opportunity to fully exit his vehicle.  And, then they had the audacity to justify the beating by asserting that he did not exit the vehicle. It is the responsibility of Defendant Bruegger and the City to not enforce this policy as it is written.

## VII.   <u>DAMAGES</u>

50.     Defendants are jointly and severally liable for the wrongs complained of herein, either by virtue of direct participation or by virtue of ordering, encouraging, aiding, abetting, committing, and/or ratifying and condoning the commission of the above described acts and/or omissions.

51.     The Plaintiff suffered compensatory, special, and punitive damages for the following:

     a.     Extreme debilitating physical pain, mental anguish and emotional distress as a result of being physically assaulted, and battered by the Officers; and

     b.     Violations of his constitutional rights by Defendants.

## VIII.   PUNITIVE DAMAGES

52.     Plaintiff is also seeking punitive damages for the egregious acts and omissions of Defendants Mark Brinker, John Doe 1-10, Chief Josh Bruegger and the City of Pasadena.

## IX.   JURY DEMAND

53.     Plaintiff respectfully demands that this action be heard before a jury.

## X.   PRAYER

For all the foregoing reasons, Plaintiff prays for judgment against all Defendants jointly, severally and in solidarity, as follows:

a.   compensatory, special and punitive damages;

b.   the cost of this action and reasonable attorneys' fees as provided by 42 U.S.C. §1988;

c.   pre-judgment and post-judgment interest;

d.   trial by jury; and

e.   such further relief as this Court deems just and equitable.

Respectfully submitted,

THE SHARIFF LAW FIRM

By: _____
    M. Obaid Shariff
    Federal I.D. No. 2827312
    Texas Bar No. 24091135
    4734 West Alabama St., Suite 201
    Houston, Texas 77027
    (713) 244-8392 (Telephone)
    (713) 244-8372 (Fax)
    mshariff@sharifflawfirm.com
    **ELECTRONIC SERVICE VIA:**
    eservice@sharifflawfirm.com

    Anthony Ray Smith
    Texas Bar No. 24093167
    The Law Office of Anthony Ray Smith, PLLC.

2616 South Loop West, Suite 218
Houston, TX 77054
(713) 242-8917 (Telephone)
(713) 583-2421 (Fax)
asmith@arsmithlawoffice.com

**ATTORNEYS FOR PLAINTIFF
NICHOLAS HECKFORD**