United States District Court
Southern District of Texas
**ENTERED**
June 18, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NICHOLAS  HECKFORD, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-4366 |
| | § | |
| CITY OF PASADENA, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

This is a 42 U.S.C. § 1983 excessive-force case against the City of Pasadena and twelve of its police officers. Defendants move to dismiss. (Doc. 32.) The Court granted in part and denied in part the Motion to Dismiss at a motion hearing on June 18, 2021. This order sets out the reasons for the Court's holdings.

### I.      BACKGROUND

Plaintiff Nicholas Heckford's First Amended Complaint, taken as true at this stage, states as follows. Heckford was "involved in a non-violent incident" at a Denny's in Pasadena. (Doc. 24 at 4.) After Heckford left the Denny's, he called back intending to "remedy[] the situation and mak[e] things right." (*Id.*) Instead, he was connected with Defendant Mark Brinker, a Pasadena police officer, who impersonated the Denny's manager and lured Heckford back to the Denny's with a promise not to press charges if Heckford paid to repair a window that he broke.

When Heckford pulled into the Denny's parking lot, he was immediately surrounded by Pasadena police officers. As he got out of his car, he was "aggressively grabbed by the neck [and] struck and pulled by at least three of the Officer Defendants." (Doc. 24 at 5.) Heckford offered "no resistance," or at most "passive resistance." (*Id.*) Nonetheless, he was "str[uck] in the head and

face" by several Officer Defendants, including Officer Brinker, then "dragged out of the vehicle and brutally slammed face first on to the concrete surface of the parking lot." (*Id.*) As he lay on the ground, "multiple officers aggressively pinned him to the ground[,] including one who forcefully pressed his knee against [Heckford's] neck[,] thereby cutting off his oxygen circulation and causing him to cry out in desperation that he could not breathe." (*Id.* at 6.) Blood pooled around Heckford's face, but none of the Officer Defendants on scene intervened to help him. Graphic photographs of Heckford's injuries, which show his face covered in blood and one of his eyes sealed shut, are attached to the Complaint.

Heckford filed an administrative complaint with the city of Pasadena. Defendant Josh Bruegger, Pasadena's Chief of Police, responded to the complaint by stating that the department's investigation found that "the action of the concerned employees under these circumstances was not a violation of law or departmental policy." (Doc. 24 at 8.)

Heckford also sought records from the city regarding his case. His attorneys filed three open records requests with the Pasadena Police Department, requesting, *inter alia*, the "identification of each officer involved." (Docs. 37-1–37-3.) Each request was rejected on different grounds: the first because "[n]o report [was] found," the second because Heckford's case remained subject to an "Open Investigation," and the third because his "case [was] still pending in the Court system." (*Id.*)

Heckford then filed his Complaint in this Court. The original Complaint named the City of Pasadena, Chief Bruegger, Officer Brinker, and John Does 1–10, "unknown police officers employed by the City of Pasadena through its Police Department." (Doc. 1 at 1.) Three months later, Heckford filed a First Amended Complaint that substituted the Officer Defendants' real names for the former John Does 1–10.

The First Amended Complaint states claims for excessive force, failure to intervene, failure to supervise, failure to train, ratification, and municipal liability. Defendants now move to dismiss on various grounds.

## II.   DISCUSSION

Defendants assert numerous grounds on which some or all of Heckford's claims should be dismissed. The Court discusses each in turn.

### A.   Statute of Limitations

Defendants first argue that Heckford's claims against all individual defendants other than Chief Bruegger and Officer Brinker are barred by the statute of limitations. This argument relies on the premise that, in naming John Does 1–10, Heckford's original Complaint failed to preserve his claims against the ten officers he subsequently named in his First Amended Complaint. The Fifth Circuit has endorsed this proposition: "[A]n amendment to substitute a named party for a 'John Doe' defendant . . . should not be allowed" to "relate back" under Federal Rule of Civil Procedure Rule 15(c)(3). *Jacobsen v. Osborne*, 133 F.3d 315, 321 (5th Cir. 1998).

Here, the parties agree that the incident in question occurred on December 27, 2018. Thus, the two-year limitations period ended on December 28, 2020—the day Heckford filed his original Complaint. Heckford's First Amended Complaint was not filed until several months later. Therefore, the First Amended Complaint was untimely as to the "John Doe" defendants and, under *Jacobsen*, does not relate back to the original Complaint.

Heckford argues that his claims against the Defendants originally named as John Does 1–10 should nonetheless be equitably tolled. Fifth Circuit caselaw is ambiguous on this point.

In *Balle v. Nueces County*, 952 F.3d 552 (5th Cir. 2017), a plaintiff filed a complaint on the eve of the limitations period's closing that named a Jane Doe defendant and later attempted to

3

amend his complaint with the defendant's real name. The court held that the plaintiff's "inability to determine the identities of the Jane Does before the limitations period had run was attributable to his own decision to file his suit so close to the end of the limitations period." *Id.* at 558. Those facts are, at first blush, similar to the facts here.

But *Balle* also stated that equitable tolling was available to a plaintiff in similar circumstances if "the delay in determining the identity of John Doe was not attributable to [his] actions." *See Balle*, 952 F.3d at 558. For instance, in *Green v. Doe*, 260 F. App'x 717 (5th Cir. 2007) (per curiam), the Fifth Circuit permitted equitable tolling where the plaintiff had "filed motions for discovery twice before limitations expired" but those motions were denied. *Id.* at 719.

This case lies closer on the spectrum to *Green* than to *Balle*. Here, Heckford has demonstrated that he repeatedly and insistently sought to obtain the names of the officers from the Pasadena Police Department. Specifically, Heckford made four requests for disclosure of their identities, in January 2019, twice in February 2019, and again in May 2019—all several months prior to the expiration of the limitations period. (Docs. 36-1–36-7.) The Department refused to supply their names. Although these exchanges took place outside of a formal litigation context, the Court finds them similar enough to the circumstances in *Green*—where the plaintiff filed motions for discovery twice prior to expiration of the limitations period—to justify equitable tolling here. Therefore, the Court holds Heckford's claims against the individual Officer Defendants timely.

### B.    Adequacy of Pleadings

Defendants next argue, citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), that the pleadings are improperly conclusory. This argument is, ironically, conclusory itself—Defendants do not explain how or why the Amended Complaint is conclusory or where it might have benefited from more

detail. The Court therefore declines to dismiss any claims on this basis.

### C.   Individual Officer Allegations

Defendants next argue that the Amended Complaint fails to make specific allegations about several of the Officer Defendants. The Court agrees.

The Amended Complaint does not make specific allegations against any of the Officer Defendants besides Chief Bruegger and Officer Brinker. It instead offers vague allegations like "several of the Officer Defendants charged at [Heckford]" and "[Heckford] was aggressively grabbed by the neck, struck[,] and pulled by at least three of the Officer Defendants." (Doc. 24 at 5.) The Amended Complaint ultimately alleges that "the Officer Defendants participated in the assault and/or witnessed it but did not intervene." (Doc. 24 at 6.) None of these allegations allows the individual Officer Defendants to determine precisely what Heckford believes that they did.

Thus, the Court will dismiss without prejudice Heckford's claims against all Officer Defendants. Heckford may replead these claims, but he must do so in a manner that adequately provides notice of his claims to each individual Officer Defendant. At minimum, the next amended complaint must make clear which Officer Defendants allegedly "participated in the assault" and which "witnessed it but did not intervene." (*See* Doc. 24 at 5–6.) If Heckford's ability to make such distinctions turns on evidence in Defendants' exclusive possession, he may raise that issue with the Court in a discovery-related motion.

### D.   Qualified Immunity

Defendants next argue, without elaboration, that they are entitled to qualified immunity. Defendants appear to assert that only seven of the eleven Officer Defendants—Sergeant Sanders and Officers Pecina, Van Der Werff, Castillo, Tabor, Warner, and Powell—are qualifiedly immune. Defendants do not explain why they differentiate between these individuals and the four

Officer Defendants not named, Officers Brinker, Perales, Aaron, and Martinez. Regardless, as discussed in the previous section of this opinion, all of the individual Officer Defendants—both those for whom Defendants assert qualified immunity and those for whom Defendants do not— are dismissed without prejudice. The qualified immunity issue is therefore moot for now. The Officer Defendants are welcome to re-raise their qualified immunity arguments once Heckford has more adequately pled his claims against them.

### E.      Failure to Train and Failure to Supervise

Defendants next move to dismiss the failure-to-train and failure-to-supervise claims against Chief Bruegger. The Court declines to do so.

Defendants initially assert a qualified-immunity defense on behalf of Chief Bruegger.  But qualified immunity does not shield Chief Bruegger against the failure-to-train and failure-to-supervise claims. At the time of the incident underlying this case, it was clearly established in the Fifth Circuit that a plaintiff could "establish Section 1983 supervisory liability against [a chief of police]" by showing that "(1) the police chief failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Hobart v. Estrada*, 582 F. App'x 348, 356 (5th Cir. 2014) (citation and internal quotation marks omitted). It was also clearly established that deliberate indifference could be shown through "a pattern of similar violations." *Id.*

Heckford's First Amended Complaint adequately states failure-to-supervise and failure-to-train claims under this clearly established law. On the first prong, the police chief's failure to supervise or train, the Amended Complaint states (a) as to training, that Chief Bruegger provided "no training whatsoever" on several aspects of excessive force standards and otherwise "did not

comport with the standard in the industry" on such trainings; and (b) as to supervision, that Chief Bruegger was "aware of [his] subordinates' acts and omissions," including that Officer Brinker "routinely violate[d] written policies." (Doc. 24 at 10–11.) On the second prong, causation, the Amended Complaint expressly states that both Chief Bruegger's failure to supervise and his failure to train caused Heckford's injuries. On the third prong, deliberate indifference—which, again, can be proven through a pattern of similar violations—the Complaint recites six specific incidents of excessive force by the Pasadena Police Department in the years prior to the incident here, four of which involve unnecessary beatings in the course of an arrest. Therefore, the First Amended Complaint adequately states failure-to-train and failure-to-supervise claims under the clearly established three-prong rubrics governing such claims.

Defendants further assail the failure-to-supervise and failure-to-train claims on various other bases. But none of their arguments supports dismissal.

First, Defendants incorrectly characterize the failure-to-train and failure-to-supervise claims as relying on the "single incident exception." (Doc. 32 at 26, 29.) But, as noted, Heckford identifies several similar incidents in his Amended Complaint. So this argument fails.

Next, Defendants contend that failure-to-train claims must be "allege[d] with specificity." (Doc. 32 at 27 (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).) But Heckford has done so here: His complaint specifies that the Department's "training programs did not comport with the standard in the industry including arrest training programs, de-escalation training programs, use of force programs, investigation protocols, grabbing individuals by the neck, removing suspects from vehicles, and training programs related to remorseful misdemeanants seeking to make restitution." (Doc. 24 at 11.) Defendants cannot in good faith argue that this allegation is unspecific. And, in any event, all of the cases Defendants cite in

attacking the specificity of the First Amended Complaint involve failures of proof at the summary-judgment stage and are therefore inapposite.

Finally, Defendants argue that the City's training programs are constitutionally adequate. This argument, recited at great length, relies on evidence not contained in the First Amended Complaint and therefore not relevant at this stage. Defendants attempt to end-run this issue by inviting the Court to "take judicial notice" of entire sections of the Texas Code and of the Pasadena Charter and Ordinances that ostensibly support their argument, but the Court declines this unorthodox invitation. (Doc. 32 at 27.) Anyhow, that evidence alone would not support dismissal given that Defendants do not offer the City's own training policies up for judicial notice.

For those reasons, the Court denies Defendants' request to dismiss the failure-to-supervise and failure-to-train claims.

### F.    Municipal Liability

Defendants also argue that the Amended Complaint fails to state a claim against the City of Pasadena. The Court disagrees.

A plaintiff can establish municipal liability under section 1983 by showing that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields v. Harris County*, 860 F.3d 803, 808 (5th Cir. 2017) (citation omitted). An official policy may be shown by demonstrating a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* at 810–11 (citation omitted).

Here, Heckford has satisfied the first prong of the municipal-liability test by pleading a custom on the part of the Pasadena Police Department of "unnecessarily escalat[ing] relatively

minor incidents" and "us[ing] more force than was necessary." (Doc. 24 at 14.) Heckford supports this custom allegation by describing six incidents in which the Department used excessive force, including by "escalat[ing] a traffic stop on a man who need[ed] surgeries on his shoulders, back, and elbows," "kick[ing] a man in the groin after he was involved in a traffic accident and unlawfully [drawing] blood," "viciously beat[ing] a man inside his apartment," "beat[ing], hog-t[ying], and kill[ing] a man," and fatally shooting two men who allegedly ran stop signs. (Doc. 24 at 8.) Heckford also alleges that, "upon information and belief," there are other similar instances. (*Id.*) At this stage, such allegations adequately support the alleged custom of unnecessarily escalating relatively minor incidents with excessive force.

The other two prongs of the municipal-liability test are easily satisfied. On the second prong, Heckford expressly alleges that the City of Pasadena and Chief Bruegger promulgated this escalation-and-excessive-force custom. On the third prong, Heckford also expressly alleges that this custom was a moving force behind the constitutional violation he suffered, a conclusion that is in any case inferable from the circumstances surrounding his injuries. Therefore, Heckford's municipal-liability claim based on a custom of unnecessary escalation and excessive force is not apt for dismissal.

Defendants' contrary arguments are unavailing. Defendants first contend, without explanation, that "the City's decision not to discipline the officers involved in this instance . . . for using force cannot alone plausibly support an assumption the City has a policy of using excessive force." (Doc. 32 at 22.) But Heckford does not argue that decision alone supports his excessive-force custom claim, so the argument attacks a straw man. Defendants next argue that Heckford fails to show that Chief Bruegger was "responsible for creating or enforcing" the excessive-force custom. (Doc. 32 at 15.) But the First Amended Complaint alleges that Chief Bruegger knew of

9

and encouraged this custom, so this argument fails. Finally, Defendants argue that Heckford fails to show that the excessive-force custom was the moving force behind the violation of his rights. But Heckford's theory of causation is glaringly obvious: He alleges that the Department had a custom of using excessive force and that he was subjected to excessive force. For all those reasons, Defendants' arguments against the excessive-force custom claim are rejected.

The Court will, however, dismiss Heckford's other, summarily pled, custom claims. First, Heckford alleges that the Department has a custom "that officers were permitted to be untruthful to accomplish illegitimate police objectives," but this claim is supported by nothing other than Officer Brinker's conduct in this case, which is not egregious enough to suggest a custom on its own. (Doc. 24 at 13.) Second, Heckford alleges that the Department has a custom of not enforcing its own policy governing an officer's duty to intervene; this claim is wholly conclusory and supported by no allegations of other incidents. Third, Heckford alleges that the Department has a custom of "gang[ing] up on misdemeanor suspects . . . and attack[ing] them in a calculated effort before they even have an opportunity to fully exit their vehicles," but this conduct is too specific to constitute a real custom and is not supported by the prior incidents alleged in the First Amended Complaint. (*See* Doc. 24 at 14.) Therefore, the Court will dismiss with prejudice Heckford's custom claims other than the core excessive-force custom claim.

### G.    Ratification

Defendants also move to dismiss Heckford's ratification claim. As this Court has explained, it is "less than clear . . . whether ratification is a truly independent theory of municipal liability . . . or whether ratification is simply indicative of a pre-existing policy or custom." *Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 794 (S.D. Tex. 2013) (Ellison, J.). In *Hobart*, this Court explained that it "doubt[ed] the propriety of holding municipalities liable on a ratification theory

10

where the constitutional violation is excessive use of force," but "conclude[d] that this Circuit apparently tolerates such claims." *Id.* at 795. Ultimately, this Court adopted the position that a municipality "is not liable under the ratification theory where a Police Chief accepts his officers' version of events, so long as that version did not show that the deputies' actions were manifestly indefensible." *Id.* (internal quotation marks and citation omitted). And this Court further recognized that "the ratification theory applies only to extreme factual scenarios." *Id.* (internal quotation marks and citation omitted).

This case is not sufficiently "extreme" to support a ratification claim. The only recognized appellate case of the sort, *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), involved the execution of an unarmed civilian bystander by a cadre of police officers in an "incompetent and catastrophic performance." *Id.* at 171. Likewise, in this Court's decision in *Hobart*, the plaintiff was a "civilian[] who died after an extraordinary number of gunshots were fired." 916 F. Supp. 2d at 796. This case, by contrast, involves a non-fatal instance of excessive force against a criminal suspect. Without minimizing the seriousness of the conduct alleged in the Amended Complaint, the Court cannot conclude that this case is as extreme in those in which ratification claims have been allowed. Therefore, the ratification claim will be dismissed with prejudice.

## H.    Official Capacity Claims Against the Officer Defendants

Defendants also move to dismiss Heckford's claims against the Officer Defendants in their official capacities. Defendants are correct that suing the Officer Defendants, other than Chief Bruegger, in their official capacities is redundant because it is no different from suing the City directly—as Heckford has. Therefore, the Court dismisses with prejudice all claims against the Officer Defendants in their official capacity.

I.      **Individual Capacity Claims Against Chief Bruegger**

Defendants also seek dismissal of Heckford's claims against Officer Bruegger in his individual capacity. As an initial matter, Heckford is correct that this argument was not raised in the initial Motion to Dismiss and is therefore waived.

Regardless, it would fail on the merits. Defendants argue that Heckford's claim against Officer Bruegger in his individual capacity is untimely because it was introduced in the First Amended Complaint, whereas the original Complaint only asserted claims against Officer Bruegger in his official capacity. Yet the Fifth Circuit has previously held that amendments to the capacity in which a government official is sued relate back to the original complaint and are permissible even after the limitations period has run. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010). Defendants do not plausibly distinguish this case from that one; like the defendant in that case, Officer Bruegger was named in the original Complaint and thus put on notice of this suit, such that his argument that he was prejudiced by the amendment rings hollow. Therefore, the Court declines to dismiss Heckford's individual-capacity claim against Officer Bruegger.

I.      **Punitive Damages**

Finally, Defendants move to dismiss Heckford's claim for punitive damages against the City. As Defendants correctly note, such damages are not available in a case against a municipality. *Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981). Therefore, the Court dismisses Heckford's claim for punitive damages against the City. He may still seek such damages from Officer Brinker and Chief Bruegger.

III.    **CONCLUSION**

For the reasons stated above, the Court holds as follows:

- The Court **GRANTS IN PART** the Motion to Dismiss and **DISMISSES WITH PREJUDICE** all claims against the Officer Defendants in their official capacities, all custom claims other than the excessive-force custom claim, and the ratification claim;

- The Court **GRANTS IN PART** the Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** all claims against the Officer Defendants so that Heckford may amend his allegations to clarify which Officer Defendants participated in the assault and which were bystanders; and

- The Court **DENIES IN PART** the Motion to Dismiss as to the failure-to-train and failure-to-supervise claims against Chief Bruegger and the excessive-force custom claim against the City.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 18th day of June, 2021.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE