**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| NICHOLAS HECKFORD, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 4:20-CV-04366 |
| CITY OF PASADENA, *et al*, | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S THIRD AMENDED AND SUPPLEMENTAL
<u>DESIGNATION AND DISCLOSURE OF EXPERTS</u>**

In accordance with Rule 26(a)(2) of the Federal Rules of Civil Procedure and the Docket

Texts and Orders in this case from May 26, 2022 and June 3, 2022, Plaintiff, Nicholas Heckford

(hereinafter the "Plaintiff"), respectfully submits his Third Amended and Supplemental

Designation and Disclosure of designated experts who may be called to testify at the trial of this

matter under Federal Rules of Evidence 702, 703, or 705.   Thus, Plaintiff, further, hereby

supplements his disclosures as follows:

**A.      RETAINED EXPERTS:**

Plaintiff designates the following retained expert witnesses who have been formally

retained, due to their special expertise, knowledge and training.  It is anticipated the experts will

testify as to all matters related to this case which are within their knowledge, training, expertise

and/or experience.

Further, in their testimony, the experts may utilize visual aids, such as photographs, charts,

models, computer animation, records, reports and other evidence, as well as all appropriate books,

literature and standards.

**Lance A. Platt, Ph.D.**
4343 Carter Creek Parkway, Suite 120
Bryan, Texas 77802
(979) 846-3950

**Subject matter:**

Dr. Platt is an expert in law enforcement procedure and training who has conducted an analysis of the occurrence which forms the basis of this lawsuit.  He has knowledge of information Plaintiff may use to support his case and refute Defendants' claims, including, but not limited to: his qualifications, the method and result of his analysis' as well as information regarding items, documents or tangible things relevant to Plaintiffs' claims and/or Defendants' defenses.

**General substance of the expert's mental impressions and opinions:**

Based upon his years of education, training, experience, professional certifications, as well as a review of case-specific records, including but not limited to the available body camera video, the Plaintiff's Deposition Transcript, Internal Affairs Interview Recordings of the Defendants, and other items listed in his initial expert report (which has been previously produced), Dr. Platt will opine as to what a reasonable officer would have done under the circumstances, and whether the Defendants' actions were objectively unreasonable under the totality of the circumstances.

For his initial report, Dr. Platt has been provided copies of the following documents: Aaron Perales IAB Interview; Aaron Perales Interrogatory Responses; Aaron Perales PIR (Personal Information Report); Aaron Perales Performance Review; Arnoldo Castillo Interrogatory Responses; Baltazar Martinez IAB Interview; Baltazar Martinez Interrogatory; Baltazar Martinez Performance Review; Baltazar Martinez PIR (Personal Information Report); Certified Ben Taub Hospital Records for Nicholas Heckford; Charlie Sanders IAB Interview; Charlie Sanders Interrogatory Responses; Charlie Sanders Performance Review; Charlie Sanders PIR (Personal Information Report); Christopher Aaron IAB Interview; Christopher Aaron Interrogatory

Responses; Christopher Aaron Performance Review; Christopher Aaron PIR (Personal Information Report); Deficient Discovery Notice; De-Escalation Techniques: Limiting the Use of Force in Public Interaction Couse Materials; Emergency 911 Phone Call; Images from Brinkley Body Cam; Incident Report, December 27, 2018; Letter dated 10/14/2019, Chief Bruegger to Mr. Heckford; Mark Brinker Body Cam; Mark Brinker IAB Interview; Mark Brinker Interrogatory Responses; Mark Brinker Performance Review; Mark Brinker PIR (personal information report); Nicholas Heckford Deposition Transcript; Pasadena Police Department Event Report; Pasadena Police Department Rules and Policies Manual (6 pages); Photographs of Heckford's injuries; Richard Powell Interrogatory Responses; Plaintiffs Third Amended Complaint and Jury Demand; Declaration of David Lopez.

For his supplemental report, Dr. Platt has been provided copies of the following documents related to the supervision and oversight of Defendant Officers: Aaron Perales Use of Force Report, 2015-10-19 [Pasadena_004802 to Pasadena_004804], Harrison Smith Use of Force Report, 2015-10-19 [Pasadena_004805 to Pasadena_004807], Sworn Affidavit of Vanessa Estrada, 2015-11-6 [Pasadena002632 to Pasadena002633], Letter to Officer Charlie Sanders, 2015-12-08 [Pasadena002628], Inter-Office Correspondence, 2015-12-18 [Pasadena002645 to Pasadena002647], Inter-Office Correspondence, 2016-02-04 [Pasadena002605 to Pasadena002606], Mark Brinker Use of Force Report, 2016-02-28 [Pasadena_004887 to Pasadena_004889, Pasadena_002064 to Pasadena_002066], Jesse Nelson Use of Force Report, 2017-04-09 [Pasadena_005142 to Pasadena_005144], Use of Force Report, 2018-04-19 [Pasadena_002082 to Pasadena_002084, Pasadena_005405 to Pasadena_005407], Sworn Affidavit of Ricardo Salcedo, 2019-03-12 [Pasadena002547 to Pasadena002548], Inter-Office Correspondence, 2019-05-20 [Pasadena002532 to Pasadena002544], Inter-Office

Correspondence, 2019-07-28 [Pasadena002529 to Pasadena002531], Aaron Perales Use of Force Report, 2019-10-04 [Pasadena_005778 to Pasadena_005780], H Smith Use of Force Report, 2019-10-04 [Pasadena_005775 to Pasadena_005777], Use of Force Report, 2019-10-04 [Pasadena_005773 to Pasadena_005774].

In addition, Dr. Platt was also provided with the following Use of Force Reports and Internal Affairs documents from incidents that pre-date the Heckford assault at the Denny's in Pasadena, TX: Inter-Office Correspondence, 2010-06-21 [Pasadena_006340 to Pasadena_006360], Summary of Complaint, 2011-10-17 [Pasadena_006316 to Pasadena_006339], Summary of Complaint, 2012-07-09 [Pasadena_006288 to Pasadena_006313], Internal Affairs File [Pasadena_006676 to Pasadena_006685, Pasadena_006761 to Pasadena_006795], Ross Konce Use of Force Report, 2014-03-13 [Pasadena_004218 to Pasadena_004220], Scott Ragsdale Use of Force Report, 2014-03-13 [Pasadena_004221 to Pasadena_004223], Ivan Santillanes Use of Force Report, 2014-10-03 [Pasadena_004460 to Pasadena_004462], Nicholas Hurst Use of Force Report, 2015-04-03 [Pasadena_004613 to Pasadena_004615], Ivan Santillanes Use of Force Report, 2015-05-16 [Pasadena_004626 to Pasadena_004628], James Timmons Use of Force Report, 2015-07-11 [Pasadena_004740 to Pasadena_004742] Felicia Pina Use of Force Report, 2016-02-14 [Pasadena_004882 to Pasadena_004884], Melvin Gallow Use of Force Report, 2016-03-20 [Pasadena_004911 to Pasadena_004913], Eduardo Pecina Use of Force Report, 2016-12-07 [Pasadena_005082 to Pasadena_005083], Rigberto Saldivar Use of Force Report, 2016-12-07 [Pasadena_005084 to Pasadena_005086], Eduardo Pecina Use of Force Report, 2016-12-10 [Pasadena_005087 to Pasadena_005088], Yuchen Mac Use of Force Report, 2016-12-17 [Pasadena_005092 to Pasadena_005094], Use of Force Report, 2016-12-17 [Pasadena_005095 to Pasadena_005097],

Rigo Saldivar Use of Force Report, 2017-02-14 [Pasadena_005130 to Pasadena_005132], Lance Howard Use of Force Report, 2017-08-2017 [Pasadena_005235 to Pasadena_005237], Raul Adame Use of Force Report, 2018-02-09 [Pasadena_005342 to Pasadena_005344], S Wilson Use of Force Report, 2018-04-18 [Pasadena_005402 to Pasadena_005404] Green Use of Force Report, 2018-11-12 [Pasadena_005561 to Pasadena_005570].

Moreover, Dr. Platt was also provided with the following Use of Force Report from incidents that post-date the Heckford assault at the Denny's restaurant in Pasadena, TX: Green Use of Force Report, 2018-12-28 [Pasadena_005586 to Pasadena_005588], Gregory Use of Force Report, 2018-12-28 [Pasadena_005589 to Pasadena_005591], Gassett Use of Force Report, 2019-02-04 [Pasadena_005612 to Pasadena_005613], Narroquin Use of Force Report, 2019-02-22 [Pasadena_005619 to Pasadena_005621], C. Rife Use of Force Report, 2019-02-22 [Pasadena_005622 to Pasadena_005624], B. Davis Use of Force Report, 2019-02-22 [Pasadena_005625 to Pasadena_005627], Castro Use of Force Report, 2019-02-22 [Pasadena_005628 to Pasadena_005630], C. Phelan Use of Force Report, 2019-02-22 [Pasadena_005631 to Pasadena_005633], O. Escobar Use of Force Report, 2019-11-10 [Pasadena_005819 to Pasadena_005821], J. Benitez Use of Force Report, 2019-12-16 [Pasadena_005848 to Pasadena_005850], A. Stahan Use of Force Report, 2020-04-29 [Pasadena_005954 to Pasadena_005956], Santillanes Use of Force Report, 2020-10-19 [Pasadena_006103 to Pasadena_006105], Satterwhite Use of Force Report, 2020-10-28 [Pasadena_006114 to Pasadena_006116], R. Logan Use of Force Report, 2021-09-03 [Pasadena_006224 to Pasadena_006225], Inter-Office Correspondence, 2021-09-15 [Pasadena_006212 to Pasadena_006213], Inter-Office Correspondence, 2021-08-16 [Pasadena_006214 to Pasadena_006215], E. Page Use of Force Report, 2021-11-17

[Pasadena_006256 to Pasadena_006258].

Further, Dr. Platt was also provided with the following Settlement Agreements: *Rivera et al. v. City of Pasadena, TX et al.*, No. 4:20-cv-01881 for $25,000.00, dated 2022-01-14 [Pasadena_006472 to Pasadena_006475], *Bates v. Adams et. al.*, No. 4:15-cv-02124 for $13,500.00, dated 2016-09-26 [Pasadena_007055 to Pasadena_007061], *Hernandez v. City of Pasadena, TX*, No. 4:13-cv-02440 for $325,000.00, dated 2014-07-16 [Pasadena_007062 to Pasadena_007066], *Moya et. al. v. City of Pasadena, TX et al.*, No. 4:12-CV-03481 for $50,000.00, dated 2014-16-01 [Pasadena_007067 to Pasadena_007077], *Oscar Hernandez v. City of Pasadena et. al*, No. 4:10-cv-00979 for $8,725.00 dated 2011-12-28 [Pasadena_007318 to Pasadena_007321].

Further, Dr. Platt was also provided with the following publicly available documents from § 1983 lawsuits against the Defendants related to other excessive force incidents: *Hernandez v. City of Pasadena et. al*., No. 4:10-cv-00979 [P001513 to P001609], *Hernandez v. City of Pasadena*, No. 4:13-cv-02440 [P001610 to P001646], *Moya et, al. v. City of Pasadena et al.*, No. 4:12-cv-0381 [P001647 to P001675], *Bates v. Adams et. al.*, No, P001676 to P001886], *Gone et al. v. City of Pasadena*, No. 4:16-cv-00684 [P001887 to P001989], *Onyinyechi v. City of Pasadena*, No. 4:18-cv-01294 [P001990 to P002045], *Rivera et. al. v. City of Pasadena*, No. 4:20-cv-01881 [P002046 to P002090], *Schenk et. al. v. City of Pasadena et. al.*, No. 4:20-cv-03799 [P002091 to P002446], *Austin et. al v. City of Pasadena et al.*, No. 4:21-cv-00774 [P002447 to P003433], *Chapa et. al. v. City of Pasadena et. al.*, No. 4:21-cv-0344 [P003434 to P003455].

While of these documents have been either previously produced by the Defendants to Plaintiff or the Plaintiff has previously produced these documents to Defendants, Plaintiff will

supplement any additional information and documents, consistent with the Federal Rules of Civil Procedure and the Court's docket control order.

Dr. Platt reserves the right to amend or supplement his expert opinions.

This expert's report has been previously produced.  *See* Doc. # 54, Ex. "1" (on 2021-11-28); Doc. # 62, Ex. "1" (on 2022-02-28).

This expert's CV / resume has been previously produced.  *See* Doc. # 54, Ex. "2" (on 2021-11-28); Doc. # 62, Ex. "2" (on 2022-02-28).

This expert's four (4) year testimony history has been previously produced.  *See* Doc. # 54, Ex. "3" (on 2021-11-28); Doc. # 62, Ex. "3" (on 2022-02-28).

This expert's supplemental report was previously produced.

As Platt has applied his expertise to the facts specific to the Plaintiff, he has also applied this same objective officer and excessive force analysis to other prior incidents involving the Pasadena Police Department as it relates to the customs, policy or practice cause of action.  While Defendants have produced some documents relevant to this analysis, Defendant has not produced all documents requested in discovery.  As such, Plaintiff reserves the right to produce a supplemental expert report once the necessary materials are propounded by Defendants

## B.    NON-RETAINED EXPERTS:

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony.  *Id*. In relevant part, it reads as follows:

> "(C) Witnesses Who Do Not Provide a Written Report.  Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
> > (i)    the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
> > (ii)   a summary of the facts and opinions to which the witness is expected to testify."

*See* Fed. R. Civ. P. 26(a)(2)

To which, here, first, the **subject matter** of the below listed non-retained medical providers of the Plaintiff consists of their medical treatment of the Plaintiff and any and all expert opinions that they arrived at during the course of that treatment, and more detail as well as disclosure is provided to that below.  Second, a **summary of the facts and opinions** each of the below listed witness is expected to testify is further provided below as well in great detail.

To briefly summarize, the Plaintiff was treated or seen by seven medical providers: (1) Acadian Ambulance Services of Texas, LLC, (2) HCA Houston Healthcare Southeast (i.e. Bayshore), (3) Harris Health Ben Taub Hospital, (4) the Kelsey-Seybold Clinic, (5) Buczek and Kobza, PLLC, (6) Townsen Memorial Hospital, and (7) Greater Psychiatric Associates, PLLC. Medical professionals from the aforementioned Clinic are expected to testify regarding their examination, diagnosis, care and treatment of the Plaintiff.

That said, however, the aforementioned medical providers are not specifically retained by or employed by the Plaintiff as an expert and as such are not required to provide a report.  No less, in an effort to diligently satisfy Fed. R. Civ. P. 26(a)(2), the Plaintiff hereby tenders the specific **subject matter** and **summary of facts and opinions** to which particular individuals from these medical providers are anticipated to testify about at trial.

1)   **ACADIAN AMBULANCE SERVICES OF TEXAS, LLC**, P.O. Box 92970, Lafayette, LA 70509, T: (800) 259-2222

    a.   **Caleb Muston, EMT**, P.O. Box 92970, Lafayette, LA 70509, T: (800) 259-2222

        On December 27, 2018 (i.e. the Date of the Incident) following the assault by the Pasadena Police imparted upon the Plaintiff, Caleb Muston, EMT was one of the EMT who treated the Plaintiff.  *See* P003673.  The reason for this dispatch was the Plaintiff was suffering from hemorrhages and lacerations.  *See* P003673.  Moreover, the Plaintiff had endured significant head trauma as well.  *See* P003673.

Given so, Plaintiff had been beaten so bad by the Pasadena Police that the EMT opined that a stretcher was required.  *See* P003673.   Upon arrival at 22:23, Caleb Muston, EMT observed and opined that the Plaintiff was suffering from an injury to the face that consisted of multiple lacerations to the face and trauma to the face.  *See* P003673; P003674.

To be more precise and for the sake of full disclosure, to Caleb Muston, EMT it appeared that the Plaintiff was suffering from a periorbital hematoma to the right eye.  *See* P003674.  Thus, Caleb Muston, EMT was of the opinion that the Plaintiff needed to be loaded on a stretcher and transported to the Bayshore Emergency Room.  *See* P003674.

Upon arrival to said emergency room, Caleb Muston, EMT observed that the Plaintiff was triaged and placed in hall bed J where he was then transferred over to HCA Houston Healthcare Southeast (i.e. Bayshore).  *See* P003674.   As the Plaintiff was unable to sign, Defendant Mark Brinker singed on his behalf.  *See* P003674.

Therefore, given the above summary of facts and opinions to which Caleb Muston, EMT is expected to testify to at trial, the subject matter on which Caleb Muston, EMT is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

2)   **HCA HOUSTON HEALTHCARE SOUTHEAST**, 4000 Spencer Highway, Pasadena, TX 77504, T: (713) 359-2000 (hereinafter "Bayshore")

a.   **Dr. Debra M. Muncy, M.D.**, HCA Houston Healthcare Southeast, 4000 Spencer Highway, Pasadena, TX 77504, T: (713) 359-2000

Dr. Muncy was an attending physician to the Plaintiff at the Bayshore Hospital following the incident made the made the basis of this lawsuit.  *See* P000709; P000712.

On December 27, 2018, the Plaintiff presented to Dr. Muncy with blunt head trauma and facial pain.  *See* P000712.  During which, the Plaintiff reported confusion and a headache.  *See* P000712.  To which, Dr. Muncy opined that it appeared to be caused by a blow to the head and blunt trauma.  *See* P000712.  The quality of which was painful, and was relieved by nothing.  *See* P000712.

Moreover, Dr. Muncy observed that the Plaintiff was confused and noted that, when he was asked what year it was he responded with 2017, and stated that the current president of the United States was Obama.  *See* P000712.  In any case, the Plaintiff reported to her that

his right knee was in considerable pain and "everything hurts." *See* P000712

In addition, Dr. Muncy may also testify to her opinions of the concussion with loss of consciousness that the Plaintiff suffered following the incident made the basis of the lawsuit. *See* P000709. That the Plaintiff suffered a fracture of his orbital bone on the right side and a maxillary fracture on the right side as well. *See* P000709.

No less, on behalf of Dr. Muncy, her scribe (i.e. April Guerra) scribed several medical opinions. To start, Dr. Muncy was of the opinion that the Plaintiff needed a review of his systems. *See* P000713. First, to his musculoskeletal system, Dr. Muncy opined that the Plaintiff was suffering from extreme pain. *See* P000713. Second, to his skin, Dr. Muncy opined that the Plaintiff was suffering from swelling. *See* P000713. Third, to his neurologic symptom, Dr. Muncy opined that he was suffering from confusion, headache. *See* P000713.

In addition, Dr. Muncy was of the medical opinion that a physical exam was needed, and so performed one. *See* P000715. Again, her scribe, April Guerra, wrote these opinions down. *See* P000715. During which, Dr. Muncy observed that the Plaintiff was tearful. *See* P000716. In addition to that emotional state, Dr. Muncy opined that the Plaintiff was suffering from a hematoma in the right temporal area. *See* P000716. Moreover, Dr. Muncy also opined that the Plaintiff was suffering from a right periorbital hematoma. *See* P000716. Near which, Dr. Muncy noted that there was dried blood at the nasal area. *See* P000716. In any case, Dr. Muncy was of the opinion that the Plaintiff needed several imaging such as CT scans and other tests be performed upon him. *See* P000719. Other doctors concurred with these assessments as well. *Infra*

Following said imaging, Dr. Muncy observed that the Plaintiff was still tearful. *See* P000720. No less, Dr. Muncy discussed with the Plaintiff her medical impression which included the necessity of a transfer to Ben Taub hospital to which the Plaintiff was agreeable. *See* P000720.

In sum, her primary impression or opinion of the injury that the Plaintiff suffered from was a concussion. *See* P000721. In addition, Dr. Muncy's second impression or opinion was that the Plaintiff was suffering from a facial fracture and optic nerve injury. *See* P000721. Thus, Dr. Muncy was of the opinion that the Plaintiff needed to be transferred to Ben Taub Hospital where they could better treat his

injuries.  *See* P000722.  These opinions were all recorded by her scribe April Guerra.

Therefore, given the above summary of facts and opinions to which Dr. Muncy is expected to testify to at trial, the subject matter on which Dr. Muncy is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

b.   **Dr. Dennis P. Lindfors, M.D.,** HCA Houston Healthcare Southeast, 4000 Spencer Highway, Pasadena, TX 77504, T: (713) 359-2000

Dr. Lindfors, like Dr. Muncy was also of the opinion that the Plaintiff needed several images to be undertaken.  *See* P000719.  To be exact, Dr. Lindfors was of the opinion that the Plaintiff needed a head/brain CT scan on December 27, 2018, and so he resulted one. *See* P000718.

There from, Dr. Lindfors had three impressions or opinions of note. First, Dr. Lindfors opined that there was a potential injury of the right optic nerve with orbital hematoma (which is a collection of pooling of blood outside of a blood vessel).  *See* P000718.  Second, Dr. Lindfors opinioned that the Plaintiff was suffering from right-sided proptosis (which is a bulging of the eyes).  *See* P000718. Third, the Plaintiff opined that the Plaintiff was suffering from right-sided nasal and orbital fractures.  *See* P000718.  It would appear that Dr. Muncy agreed with these assessments as well.  *Supra*.

Given so, Dr. Lindfors recommended dedicated maxillofacial CT and consultation with ophthalmology.  *See* P000718.  Therefore, given the above summary of facts and opinions to which Dr. Lindfors is expected to testify to at trial, the subject matter on which Dr. Linfors is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

c.   **Dr. Jody S. Lee, M.D. ,** HCA Houston Healthcare Southeast, 4000 Spencer Highway, Pasadena, TX 77504, T: (713) 359-2000

With regards to the Plaintiff, along with Dr. Muncy, Dr. Lee was of the opinion that the Plaintiff needed a CT of the maxillofacial bones of the Plaintiff using thin axial cuts, and so Dr. Lee undertook one. *See* P000751.  Coronal and sagittal reconstructed images were also obtained and displayed.  *See* P000751.  Automated exposure reduction was also utilized as well.  *See* P000751. From that, the findings and opinions by Dr. Lee consisted of the following:

"Right facial and periorbital soft tissue swelling is present. A right nasal bone fracture is seen, with 1 mm displacement and minimal deviation to the left. The right lamina paptracea is also fractured, with 3 mm medial displacement of the cortex. A nondisplaced fracture of the medial right displacement of the cortex. A nondisplaced fracture of the medial right maxillary sinus all is present. Heterogenus fluid within the right ethmoid air cells and right maxillary sinus likely contains blood.

A right orbital floor fracture is present, with 5 mm inferior displacement… There is focal thickening of the distal optic nerve adjacent to the right globe, with adjacent fat stranding suggestive of edema or inflammation. Possible focal hemorrhage."

*See* P000751.

From which, Dr. Lee had six impressions or opinions of note. *See* P000719; P000751. First, Dr. Lee opined that the Plaintiff suffered from a displaced right nasal bone fracture. *See* P000719; P000751. Second, Dr. Lee opined that the Plaintiff suffered from a displaced right lamina papyracea fracture. *See* P000719; P000751. Third, Dr. Lee opined that the Plaintiff suffered from right maxillary sinus fracture. *See* P000719; P000751. Fourth, Dr. Lee opined that the Plaintiff endured a right orbital floor fracture with 5 mm inferior cortical displacement. *See* P000719; P000751. Fifth, Dr. Lee opined that the Plaintiff experienced focal thickening of the distal optic nerve at the globe which was compatible with a traumatic injury. *See* P000719; P000751. Sixth, Dr. Lee opined that the Plaintiff suffered from a right facial and periorbital soft issue swelling and blood in the right paranasal sinuses. *See* P000719; P000751.

Therefore, given the above summary of facts and opinions to which Dr. Lee is expected to testify to at trial, the subject matter on which Dr. Lee is expected to testify in regards to his above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

3)   **HARRIS HEALTH BEN TAUB HOSPITAL**, 1504 Ben Taub Loop, Houston, TX 77030, T: (713) 566-6600

Following his treatment at Bayshore, the Plaintiff was then immediate transferred to Ben Taub Hospital, at which, he was seen by the following non-retained medical experts who there treated him for his injuries:

a.   **Dr. Susan A. Eicher, M.D.,**  1504 Ben Taub Loop, Houston, TX 77030, T: (713) 566-6600

On December 28, 2018, the Plaintiff first presented to Dr. Eicher with a chief complaint of eye swelling.  *See* P000765.  To which, Dr. Eicher opined and diagnosed the Plaintiff with an open fracture of orbit, initial encounter.  *See* P000765.

Therefore, given the above summary of facts and opinions to which Dr. Eicher is expected to testify to at trial, the subject matter on which Dr. Eicher is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

b.   **Dr. Walter D. Appling, M.D.**, 1504 Ben Taub Loop, Houston, TX 77030, T: (713) 566-6600.

On December 28, 2018, Dr. Appling interviewed and examined the Plaintiff with Dr. Ahn Kudela (see below).  *See* P000766.  During which Dr. Appling opined and formed several impressions and devised a plan of treatment.  *See* P000766.

That day, to Dr. Appling and Dr. Kudela, the Plaintiff presented with eye swelling.  *See* P000766.  During which, the Plaintiff exhibited significant orbital swelling and bruising and retro-orbital hematoma. *See* P000766.  Thus, Dr. Appling and Dr. Kudela discussed with the Plaintiff their opinions which consisted a recommendation of surgical repair of floor fracture within two weeks.  *See* P000766.

Therefore, given the above summary of facts and opinions to which Dr. Appling is expected to testify to at trial, the subject matter on which Dr. Appling is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

c.   **Dr. Molly A. Kudela, M.D.**, 1504 Ben Taub Loop, Houston, TX 77030, T: (713) 566-6600

On December 28, 2018, Dr. Kudela also interviewed and examined the Plaintiff with Dr. Appling.  *See* P000766.  During which Dr. Kudela opined and formed several impressions and devised a plan of medical treatment.  *See* P000766.

That day, to Dr. Kudela and Dr. Appling, the Plaintiff presented with eye swelling. *See* P000766. During which, the Plaintiff exhibited significant orbital swelling and bruising and retro-orbital hematoma. *See* P000766. Thus, Dr. Kudela and Dr. Appling discussed their opinions with the Plaintiff which including a recommendation of surgical repair of floor fracture within two weeks. *See* P000766.

In addition, Dr. Kudela noted a few things from the Plaintiff's CT Max/Fac from December 27, 2018. *See* P000769. Namely, Dr. Kudela's impression included five (5) opinions to which he may testify to at the trial of this case.

First, the Plaintiff had suffered a right orbital blowout fracture involving the floor and lamina papyracea. *See* P000769. Second, there was a herniation of orbital fact into the fracture defect. *See* P000769. Third, there was right inferior rectus muscle protruding into the lamina papyracea defect. Fourth, there was a suspected right retrobulbar hematoma. *See* P000769. Fifth, there was displaced retrobulbar fractures of the frontal process of the right maxilla and bilateral nasal bones. *See* P000769.

Given so, Dr. Kudela diagnosed and further opinioned that the Plaintiff was suffering from an orbital floor blow out fracture on right side as well as a nasal bone fracture. *See* P000769. Therefore, Dr. Kudela was of the opinion that the Plaintiff needed surgical repair within two (2) weeks at Kelsey Seybold. *See* P000769.

Therefore, given the above summary of facts and opinions to which Dr. Kudela is expected to testify to at trial, the subject matter on which Dr. Kudela is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

d.   **Dr. Alan H. Shum, M.D.**, 1504 Ben Taub Loop, Houston, TX 77030, T: (713) 566-6600

On December 28, 2018, Dr. Shum was an ER resident medical doctor at Ben Taub who treated the Plaintiff. To Dr. Shum, the Plaintiff presented with a chief complaint of facial injury. *See* P000778. During which, the Plaintiff reported to Dr. Shum with headaches and blurry vision in the right eye. *See* P000778. Given so, Dr. Shum was of the opinion that the mechanism of injury was an assault or direct blow. *See* P000778. To be more precise that the type of assault was a "Beaten" from the "Police." *See* P000779.

14

Thus, the pain details observed by Dr. Shum included sharp pain radiating to the face which was constant and unchanging. *See* P000779. From that, Dr. Shum observed that the Plaintiff was suffering from blurred vision and headaches. *See* P000779. That also included pain, redness, and visual disturbance. *See* P000780.

In addition, Dr. Shum observed and opined that the Plaintiff's head was suffering from a contusion and right periorbital erythema. *See* P000780. And, that the Plaintiff's right eye was exhibiting chemosis. *See* P000780. That the Plaintiff's right conjunctiva was injected and had a hemorrhage. *See* P000780.

Thus, Dr. Shum opined that for the right orbital blowout, he will need to consult BT face. *See* P000780. And, he consulted BR ophtho for the small retrobulbar hematoma, elevated IOP per their exam, and noted that they will discuss performing lateral canthotomy. *See* P000780. In addition, Dr. Shum was of the opinion that the Plaintiff needed pain control as well. *See* P000781.

Furthermore, Dr. Shum ordered a fluorescein 1 mg ophthalmic 1 strip as well as a consult to Ophthalmology. *See* P000794. In addition, Dr. Shum also opined and placed an order for the Plaintiff to consult with otolaryngology. *See* P000796. Therein between the Plaintiff was given morphine for his excruciating pain. *See* P000794 and P000822.

In addition, Dr. Shum discussed with Dr. Mathew Darce updating findings regarding a small right retrobulbar hematoma. *See* P000814. Therefore, given the above summary of facts and opinions to which Dr. Shum is expected to testify to at trial, the subject matter on which Dr. Shum is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

e. **Dr. Pablo Tovar, M.D.,** 1504 Ben Taub Loop, Houston, TX 77030, T: (713) 566-6600

Dr. Tovar was an attending medical provider whom treated the Plaintiff on December 28, 2018. *See* P000776. To be exact, Dr. Tovar was among the staff that arrived to treat the Plaintiff following his transfer from Bayshore. *See* P000786. The reason for this visit with Dr. Tovar was due to a facial injury. *See* P000839. From which, Dr. Tovar opined and diagnoses the Plaintiff with Trauma, namely (a) periorbital ecchymosis of the right eye, and (b) closed fracture of the right orbital bone. *See* P000839.

15

Thus, Dr. Tovar was of the opinion that the Plaintiff needed several medications.   Those included (a) iohexal (omnipaque), (b) morphine, and (c) ondansetron (Zofran).  *See* P000839; P000826.

In addition, Dr. Tovar ordered  various labs and imaging for Mr. Heckford.  *See* P000805-P000818; P000839.  First, Dr. Tovar was of the opinion that the Plaintiff needed a Complete Blood Count With Differential (CBC).   *See* P000806; P000807-P000808; P000839.  Second, Dr. Tovar was of the opinion that the Plaintiff needed a prothrombin time (PT/INR) test.  *See* P000806; P000839.  Third, that the Plaintiff needed a type and screen test.  *See* P000808; P000839.   Fourth, that the Plaintiff needed a POC BMP (Basic Metabolic Panel w/ H&H) test.  *See* P000810; P000839.

Moreover, Dr. Tovar was also of the opinion that the imaging of the Plaintiff was also needed as well.  Given so, Dr. Tovar ordered four (4) images.  *See* P000839.  First, Dr. Tovar was of the opinion that a chest X-ray was needed.  *See* P000811; P000839.  Second, Dr. Tovar was also of the opinion that a CT Maxillofacial w/o contrast image was needed.  *See* P000813 to P000817; P000839.  Third,  Dr. Tovar was also of the opinion that a CT Abdomen and Pelvis image was also needed.  *See* P000818 to P000821; P000839.  Fourth, Dr. Tovar was also of the opinion that a CT outside imaging consult with outside report was needed.  *See* P000839.

With that, Dr. Tovar was of the opinion that the Plaintiff needed an immediate specialty follow up appointment.  *See* P000824.  This was due to a diagnosis of trauma, and a resulting orbital fracture.  *See* P000824.  Moreover, Dr. Tovar also opined that the Plaintiff needed several consults as well, such as one to ophthalmology and otolaryngology.  *See* P000825; P000839.

Therefore, given the above summary of facts and opinions to which Dr. Tovar is expected to testify to at trial, the subject matter on which Dr. Tovar is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

f.   **Dr. Shehni Nadeem, M.D.**, 1504 Ben Taub Loop, Houston, TX 77030, T: (713) 566-6600

Dr. Nadeem is a resident emergency room medicine doctor who may testify as to his opinions arrived at during his observations and course of medical treatment of the Plaintiff.  *See* P000776.  She was part of the triage team that treated the Plaintiff at Ben Taub Hospital following the incident made the basis of this lawsuit.  *See* P000796.

16

At Ben Taub, Dr. Nadeem opined and diagnosed the Plaintiff had suffered from trauma.  *See* P000776.  To be more precise, Dr. Nadeem's opinions were that the type of trauma that the Plaintiff suffered from consisted of the following: (a) periorbital ecchymosis of right eye, and (b) closed fracture of the right orbital floor.  *See* P000776.  Thus, she may testify as to these opinions at trial.

To be exact, Dr, Nadeem reexamined the Plaintiff following the above referenced Dr. Shum's assessment and treatment.  *See* P000781.  During which, Dr. Nadeem opined that the Plaintiff's then current clinical impressions included trauma.  *See* P000782.

Thus, Dr. Nadeem was of the opinion that, once the Plaintiff has finally stabilized that he could be discharged home.  *See* P000782.  She was of the opinion that the Plaintiff should follow up thereafter with a specialty ophthalmology, ENT clinics, and some referrals were provided.  *See* P000782.

First, Dr. Nadeem was of the medical opinion that the Plaintiff needed an immediate specialty follow-up appointment.  *See* P000824.  The medical reason for that was that the Plaintiff was suffering from an "orbital fracture" and as such he should follow up within eight to fourteen days with any first available ENT.  *See* P000824.

Second, Dr. Nadeem was also of the medical opinion that the Plaintiff needed to be scheduled for follow-up with any first available Ophthalmology (B/L).  *See* P000824.  The medical reason for this was for a K check and IOP.  *See* P000824.

Therefore, given the above summary of facts and opinions to which Dr. Nadeem is expected to testify to at trial, the subject matter on which Dr. Nadeem is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

g.     **Dr. Zubaid R. Rafique, M.D.**, 1504 Ben Taub Loop, Houston, TX 77030, T: (713) 566-6600.

Dr. Rafique also treated the Plaintiff at Ben Taub on or around December 28, 2018.  *See* P000783; P000795.  During with the Dr. Rafique opined that the Plaintiff had suffered from a right orbital wall fracture, with increased IOP (i.e. interocular pressure).  *See* P000783; P000795.  Given so, Dr. Rafique was of the opinion that

17

the Plaintiff needed a consult with ophtal and face medical professional. *See* P000783; P000795.

Therefore, given the above summary of facts and opinions to which Dr. Rafique is expected to testify to at trial, the subject matter on which Dr. Rafique is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

h.     **Dr. Roxana T. Khozein-Carrera, M.D.**, 1504 Ben Taub Loop, Houston, TX 77030, T: (713) 566-6600.

Dr. Khozein-Carrera is an Emergency Medicine resident who also treated the Plaintiff at Ben Taub on or around December 28, 2018. *See* P000776.   During which, Dr. Khozein-Carrera was of the opinion that further imaging was needed, particularly a CT outside imaging with outside side and so she placed an order for one. *See* P000787.

In addition, Dr. Khozein-Carrera was also of the opinion that the Plaintiff needed two sets of labs, specifically PT/INR and CBC/DIFF, and so ordered these labs. *See* P000789.

Thereafter, Dr. Khozein-Carrera was of the opinion that the Plaintiff needed further imaging which included following: (i) an x-ray of the chest, (ii) a cat scan of the abdomen and pelvis with contrast, and (iii) a cast scan of the maxillofacial w/o contrast. *See* P000789.  To be exact, the indication for so ordering such imaging was that the Plaintiff has been the victim of an assault. *See* P000812; P000814.

From that maxillofacial imaging, there were several findings.  First, as to the soft tissues, the right periorbital, right premaxillary, and nasal soft tissue showed swelling and the palatine tonsils were mildly prominent  *See* P000814.  There was also swelling over the bridge of the nose. *See* P000817.

Second, as to bones, Plaintiff appeared to be suffering from many things as far as Dr. Khozein-Carrera was concerned. *See* P000814-P000815.  Firstly, the Plaintiff had acute, depressed fracture of the frontal process of the right maxilla.   *See* P000815; P000817.  Secondly, the Plaintiff had displaced fractures of the bilateral nasal bones. *See* P000815.  Thirdly, the Plaintiff had acute and depressed fractures of the inferior wall of the right orbit with mild termination of extraconal fat. *See* P000815.  Fourthly, the right muscle appeared to be protruding into the right orbital floor. *See* P000815.  Fifthly, there was also a depressed fracture of the medial orbital wall on the

right (lamina papyracea) with a herniation of extra conal fat. *See* P000817. Sixthly, there was a right medial rectus muscle protruding into the lamina papyracea. *See* P000815.

In addition, third as to orbits, the Plaintiff appeared to also have a right retrobulbar stranding and soft tissue density which is suspicious for small retrobulbar hematoma. *See* P000815; P000817. Fourth, as to paranasal sinuses, the Plaintiff had hemorrhagic opacification of the right maxillary and ethmoid air cells. *See* P000815; P000817.

From that there were several opinions and impressions. *See* P000815; P000818. First, that the right orbital blowout fracture involves the floor and lamina papyracea. *See* P000815; P000818. Second, that there was a herniation of orbital fact into the fracture. *See* P000815; P000818. Third, that the right inferior muscle protruded into the orbital defect. *See* P000815; P000818. Fourth, that the right medial rectus muscle protruded into the lamina papyracea defect. *See* P000815; P000818. Fifth, that the there was a right retrobulbar hematoma. Sixth, that there was a displaced fracture of the frontal processes of the right maxilla and bilateral nasal bones. *See* P000815; P000818

Separately, Dr. Khozein-Carrera was of the opinion that the Plaintiff needed a 4 mm injection of ondansetron (Zofran), and so she ordered one. *See* P000791; P000826.

Therefore, given the above summary of facts and opinions to which Dr. Khozein-Carrera is expected to testify to at trial, the subject matter on which Dr. Khozein-Carrera is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

i.  **Dr. Elaine J. Zhou, M.D.**, 1504 Ben Taub Loop, Houston, TX 77030, T: (713) 566-6600.

Dr. Zhou is from the ophthalmology department and treated the Plaintiff at Ben Taub Hospital following the incident made the basis of this lawsuit. *See* P000781. In particular, ophthalmologist Dr. Zhou consulted with Dr. Shum about the Plaintiff. *See* P000781.

Additionally, Dr. Zhou examined the Plaintiff at his bedside as well. *See* P000783; P000795. To her, the Plaintiff reported a six out of ten level of pain. *See* P000783; P000795. Moreover, the Plaintiff reported that the vision in his right eye has been blurry since his

assault. *See* P000783; P000795. Given so, Dr. Zhou is anticipated to provide medical opinions based on these reported facts to her.

Moreover, Dr. Zhou also was of the opinion that Plaintiff's eyes needed to be dilatated, and as such, she applied medication to do so. *See* P000783; P000795.

Further, Dr. Zhou, along with Dr. Verkade, provided a consult for the Plaintiff's retrobulbar hematoma. *See* P000799. During which, Dr. Zhou noted that the Plaintiff had no past ocular history, but was presenting after an assault with right eye pain and found to have a right orbital floor and medial wall facture with a small retrobulbar hematoma. *See* P000799. To which, the Plaintiff reported that he was assaulted by police who used their fists to hit him. *See* P000799.

During her examination, Dr. Zhou opinioned and found that the Plaintiff was suffering from a proptosis (i.e. a bulging of the eye). *See* P000800. As such, Dr. Zhu was of the opinion that the Plaintiff needed two kinds of tests, a pen light exam and a dilated fundus exam. *See* P000801. From which, she arrived at several opinions.

The first of which was Dr. Zhou's impression that the right orbital blowout fracture involves the floor and lamina papracea. *See* P000801. Second, Dr. Zhou found a herniation of orbital fat into the fracture. *See* P000801. Third, Dr. Zhou found that the right inferior rectus muscle protrudes into the orbital floor defect. *See* P000801. Fourth, Dr. Zhou found that there was a right medial rectus muscle minimally protruding into the lamina prapyracea. *See* P000801. Fifth, Dr. Zhou also suspected a small right retrobulbar hematoma. *See* P000801. Sixth, Dr. Zhou further opined that the Plaintiff was suffering from displaced fractures of the frontal process of the right mazilla and bilateral nasal bones. *See* P000801.

From that, Dr. Zhou formed her opinion for an assessment and plan which touched on two items of concern. *See* P000801. The first was the retrobulbar hematoma, and the second was the right orbital floor and medial wall fracture. *See* P000801-P000802. To be exact, she reported her opinions as follows:

> "Assessment and Plan:
>
> 1. Retrobulbar hematoma, OD:
>
> - Reviewed CT with radiology with concern for small retrobulbar hematoma OD;
> - Minimal proptosis appreciated on exam;

- IOP OD low-mid 30s with Desmarres retractors. IOP on recheck after 30 min is 29 and after 1 hour is 27;
- No rAPD. BCVA 20/50 - No indication for lateral canthotomy/cantholysis at this point;
- Please re-consult ophthalmology and consider urgent lateral canthotomy/cantholysis if change in status including new rAPD (although patient will be pharmacologically dilated for the next 4-8 hours) or increasing intraocular pressure.

2. Right orbital floor and medial wall fracture
- Mechanism: blunt trauma with fists after assault - Reviewed CT with radiology. Appreciate orbital floor and medial wall fracture OD.
- Moderate general restriction in EOM with minimal proptosis
- No oculocardiac reflex. No diplopia although right eye closed 2/2 edema
- DFE as above.
- No urgent surgical indication for orbital fracture from ophthalmology standpoint.

Follow up 1-week general ophthalmology clinic for IOP check and motility."

*See* P000802.

Therefore, given the above summary of facts and opinions to which Dr. Zhou is expected to testify to at trial, the subject matter on which Dr. Zhou is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

j.      **Dr. Angela J. Verkade, M.D.,** 1504 Ben Taub Loop, Houston, TX 77030, T: (713) 566-6600

Dr. Verkade is PGY-4 Ophthalmology specialist from Baylor College of Medicine who also treated the Plaintiff at Ben Taub Hospital following the incident made the basis of the lawsuit. *See* P000799; P000802. To be exact, she reviewed Dr. Zhou findings, impressions, and opinions and concurred with her assessment and plan. *See* P000799; P000802.

Therefore, given the above summary of facts and opinions to which Dr. Verkade is expected to testify to at trial, the subject matter on which Dr. Verkade is expected to testify in regards to the above-

referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

k.  **Dr. Matthew M. Darce, M.D.,** 1504 Ben Taub Loop, Houston, TX 77030, T: (713) 566-6600.

Dr. Darce is a resident M.D. with Ben Taub Hospital who treated the Plaintiff following the incident made the basis of the lawsuit. To be exact, he was of the opinion that the Plaintiff needed an X-Ray, and so resulted one. *See* P000812- P000813.

In addition, Dr. Darce was of the opinion that the Plaintiff also needed a CT Maxillofacial without contrast imaging. *See* P000814. From that maxillofacial imaging, there were several findings. First, as to the soft tissues, the right periorbital, right premaxillary, and nasal soft tissue showed swelling and the palatine tonsils were mildly prominent *See* P000814. There was also swelling over the bridge of the nose. *See* P000817.

Second, as to bones, Plaintiff appeared to be suffering from many things. *See* P000814- P000815. Firstly, the Plaintiff had acute, depressed fracture of the frontal process of the right maxilla. *See* P000815; P000817. Secondly, the Plaintiff had displaced fractures of the bilateral nasal bones. *See* P000815. Thirdly, the Plaintiff had acute and depressed fractures of the inferior wall of the right orbit with mild termination of extraconal fat. *See* P000815. Fourthly, the right muscle appeared to be protruding into the right orbital floor. *See* P000815. Fifthly, there was also a depressed fracture of the medial orbital wall on the right (lamina papyracea) with a herniation of extra conal fat. *See* P000817. Sixthly, there was a right medial rectus muscle protruding into the lamina papyracea. *See* P000815.

In addition, third as to orbits, the Plaintiff appeared to also have a right retrobulbar stranding and soft tissue density which is suspicious for small retrobulbar hematoma. *See* P000815; P000817. Fourth, as to paranasal sinuses, the Plaintiff had hemorrhagic opacification of the right maxillary and ethmoid air cells. *See* P000815; P000817.

From that there were several opinions and impressions. *See* P000815; P000818. First, that the right orbital blowout fracture involves the floor and lamina papyracea. *See* P000815; P000818. Second, that there was a herniation of orbital fact into the fracture. *See* P000815; P000818. Third, that the right inferior muscle protruded into the orbital defect. *See* P000815; P000818. Fourth, that the right medial rectus muscle protruded into the lamina

22

papyracea defect. *See* P000815; P000818. Fifth, that the there was a right retrobulbar hematoma. Sixth, that there was a displaced fracture of the frontal processes of the right maxilla and bilateral nasal bones. *See* P000815.; P000818

Therefore, given the above summary of facts and opinions to which Dr. Darce is expected to testify to at trial, the subject matter on which Dr. Darce is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

l.    **Dr. Alfred Delumpa**, M.D., 1504 Ben Taub Loop, Houston, TX 77030, T: (713) 566-6600.

Dr. Delumpa is an M.D. with Ben Taub Hospital who treated the Plaintiff following the incident made the basis of the lawsuit. During which, Dr. Darce was of the opinion that the Plaintiff needed a CT Maxillofacial without contrast imaging. *See* P000814.

From that maxillofacial imaging, there were several findings. First, as to the soft tissues, the right periorbital, right premaxillary, and nasal soft tissue showed swelling and the palatine tonsils were mildly prominent *See* P000814. There was also swelling over the bridge of the nose. *See* P000817.

Second, as to bones, Plaintiff appeared to be suffering from many things as far as Dr. Delumpa was concerned. *See* P000814-P000815. Firstly, the Plaintiff had acute, depressed fracture of the frontal process of the right maxilla. *See* P000815; P000817. Secondly, the Plaintiff had displaced fractures of the bilateral nasal bones. *See* P000815. Thirdly, the Plaintiff had acute and depressed fractures of the inferior wall of the right orbit with mild termination of extraconal fat. *See* P000815. Fourthly, the right muscle appeared to be protruding into the right orbital floor. *See* P000815. Fifthly, there was also a depressed fracture of the medial orbital wall on the right (lamina papyracea) with a herniation of extra conal fat. *See* P000817. Sixthly, there was a right medial rectus muscle protruding into the lamina papyracea. *See* P000815.

In addition, third as to orbits, the Plaintiff appeared to also have a right retrobulbar stranding and soft tissue density which is suspicious for small retrobulbar hematoma. *See* P000815; P000817. Fourth, as to paranasal sinuses, the Plaintiff had hemorrhagic opacification of the right maxillary and ethmoid air cells. *See* P000815; P000817.

From that there were several opinions and impressions. *See* P000815; P000818. First, that the right orbital blowout fracture involves the floor and lamina papyracea. *See* P000815; P000818. Second, that there was a herniation of orbital fact into the fracture. *See* P000815; P000818. Third, that the right inferior muscle protruded into the orbital defect. *See* P000815; P000818. Fourth, that the right medial rectus muscle protruded into the lamina papyracea defect. *See* P000815; P000818. Fifth, that the there was a right retrobulbar hematoma. Sixth, that there was a displaced fracture of the frontal processes of the right maxilla and bilateral nasal bones. *See* P000815.; P000818

Therefore, given the above summary of facts and opinions to which Dr. Delumpa is expected to testify to at trial, the subject matter on which Dr. Delumpa is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

4) **KELSEY-SEYBOLD CLINIC**, 5001 East Sam Houston Parkway S, Pasadena, TX 77505, (713) 442-7100

a. **Dr. Gerald Isaac, M.D.,** 5001 East Sam Houston Parkway S, Pasadena, TX 77505, (713) 442-7100

Dr. Isaac is an internal medical doctor at the Kelsey-Seybold Clinic who treated the Plaintiff during an office and patient visit on or around December 31, 2018. *See* P000866. This was after his hospitalization at Bayshore and Ben Taub Hospital. *See* P000860. And, approximately, seven days of the date of the incident at the Denny's. *See* P000863. During this visit with Dr. Isaac, saw the Plaintiff face-to-face for a total of forty (40) minutes. *See* P000862. Half of that time was spent on counseling and coordination of medical care regarding the Plaintiff's orbital fracture. *See* P000862.

During this lengthy visit with Dr. Issac, the Plaintiff's chief complaint concerned multiple facial trauma from an assault by the Police. *See* P000860. After which, his medical problems had been unchanged and occurred constantly. *See* P000863. With that and other information provided by the Plaintiff, Dr. Issac was able to arrive at several opinions regarding the Plaintiff's symptoms.

As to these symptoms, with more specificity, Dr. Issac first opined the Plaintiff was positive for suffering from pain, discharge, redness, and visual disturbance. *See* P000863. Second, Dr. Issac noted that an associated symptom include arthralgias (i.e. joint stiffness) and back pain. *See* P000863.

In addition, Dr. Issac performed a physical examine during and after which he was also able to arrive at several other medical opinions as well. *See* P000863. First, Dr. Issac opined that that the Plaintiff appeared to be distressed. *See* P000863. Second, Dr. Issac opined that the Plaintiff's head was suffering from a right periorbital erythema. *See* P000863. Third, Dr. Issac opined that the Plaintiff's right eye was exhibited chemosis. *See* P000863. Fourth, he further opined that the right conjunctiva was injected. *See* P000863. Fifth, that the Plaintiff's right conjunctive also had a hemorrhage. *See* P000863. And, sixth, that the right eye also exhibited abnormal extraocular motion. *See* P000863. Seventh, Dr. Issac also further opined that the Plaintiff's skin also appeared to be suffering from bruising. *See* P000864.

With that, Dr. Issac overall opined and diagnosed the Plaintiff had suffered an orbital fracture, and a rib contusion on the left side. *See* P000860; P000862; P000864. Given so, Dr. Issac opined that the Plaintiff should be referred to other medical specialists, among which was to optometry and orthopedics. *See* P000865.

Thereafter, in addition to the December 31, 2018 visit with Dr. Issac, the Plaintiff also again saw Dr. Issac on January 9, 2019. *See* P000894. During this visit, the Plaintiff's chief complaints consisted of chest and foot pain. *See* P000894; P000896. With more precision, Dr. Issac opined that it was bilateral rib pain which intensified when the Plaintiff coughed or bore weight. *See* P000894; P000896. In addition, Dr. Issac opined that the Plaintiff was also suffering from left foot pain which was bruised and swollen after the police had assaulted him. *See* P000894; P000896. Thus, vis-a-vi, Dr. Issac's opinion, the Plaintiff was primarily suffering from pain. *See* P000894.

As such, Dr. Issac was of the medical opinion that the Plaintiff needed another physical exam. *See* P000896. During it, Dr. Issac opined that the Plaintiff was exhibiting tenderness. *See* P000896. From that, Dr. Issac opined that the Plaintiff needed further imaging of the relevant area, and so ordered it. *See* P000898.

Therefore, given the above summary of facts and opinions to which Dr. Isaac is expected to testify to at trial, the subject matter on which Dr. Isaac is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

b.   **Dr. Amita D. Patel, O.D.,** 5001 East Sam Houston Parkway S, Pasadena, TX 77505, (713) 442-7100

Dr. Patel is an optometrist at the Kelsey Seybold clinic who treated the Plaintiff on January 2, 2019 following the incident made the basis of this lawsuit. *See* P000867. During which, the Plaintiff's chief complaint was eye problems. *See* P000867. These were the result of ocular trauma that the Plaintiff suffered on December 27, 2018. *See* P000869. During which, the Plaintiff was hit in the eye which then caused swelling. *See* P000869.

Dr. Patel noted that the Plaintiff was treated at Bayshore then transported to Ben Taub where he was diagnosed with an orbital fracture and was told surgery would be needed but that the eye was too swollen at that time for surgery to be performed. *See* P000869. To Dr. Patel, however, the Plaintiff complained of redness in the right eye, pain, itching and blurred vision in the right eye. *See* P000869. In addition, Dr. Patel was made aware that the Plaintiff was suffering from diplopia in the left eye. *See* P000869.

As such, Dr. Patel's assessment or overall opinions were that the Plaintiff suffered from blunt trauma to the right eye. *See* P000869. To be exact, Dr. Patel opined that the Plaintiff was suffering from ecchymosis with subconjunctival hemorrhage. *See* P000869. That the Plaintiff was suffering from diplopia on superior and temporal gaze of the right eye. *See* P000869. As such, Dr. Patel was of the opinion that the Plaintiff needed to be referred to another medical professional (i.e. Gina R. Obeng, C.O.) for orthoptic measurements and to an ENT for orbital reconstruction. *See* P000869.

Therefore, given the above summary of facts and opinions to which Dr. Patel is expected to testify to at trial, the subject matter on which Dr. Patel is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

c.   **Gina R. Obeng, C.O.,** 5001 East Sam Houston Parkway S, Pasadena, TX 77505, (713) 442-7100

Gina R. Obeng, C.O. is an orthoptist in the ophthalmology department of the Kelsey Seybold Clinic who treated the Plaintiff on or around January 2, 2019. *See* P000872. During which, the Plaintiff chief complaint to Dr. Obeng was double vision. *See* P000872. With that, Dr. Obeng opined and diagnoses the Plaintiff with the following: (a) diplopia, (b) hypotropia of right eye, (c) blow-out fracture, and (d) a closed fracture of the right orbital bone with delayed healing. *See* P000872.

More precisely, Dr. Obeng noted that the Plaintiff presented to, following being seen at Ben Taub Hospital on December 28, 2018 and being tentatively scheduled for surgery which was cancelled due to his eyes being too swollen for it. *See* P000872. That, thereafter he was seen by Dr. Patel at Kelsey Seybold who then referred the Plaintiff to her. *See* P000872.

At that time, on January 2, 2019, the Plaintiff reported to Dr. Obeng that he was suffering from what she opined to be binocular vertical double vision after trauma to the right eye. *See* P000874. That the Plaintiff suffered from double vision when looking straight ahead. *See* P000872. As such, Dr. Obeng opined and came up with an orthoptic impression that consisted of five parts. *See* P000872.

The first of these opinions was that the Plaintiff was suffering from diplopia in up gaze. *See* P000872. The second was that the Plaintiff was suffering from right hypotropia. *See* P000872. The third was that the Plaintiff was suffering from right orbital blow out fracture involving right inferior rectus muscle. *See* P000872. The fourth was blunt right eye with ecchymosis. *See* P000872. The fifth was DM. *See* P000872.

With that, Dr. Obeng was also of the further opinion that the Plaintiff needed to have a plastic surgery consultation with Dr. Bullocks for possible orbital fracture repair. *See* P000872.

No less, Dr. Obeng was also of the opinion that the Plaintiff needed a procedure known as a special eye evaluation. *See* P000875. The indications for which consisted of (a) diplopia, (b) hypotropia of the right eye, and (c) closed fracture of right orbital floor with delayed healing. *See* P000874. Thus, to be exact, first, a base eye exam was needed and it measures (i) visual acuity, (ii) pupils, and (iii) extraocular movement. *See* P000875. It secondly also consisted of a strabismus exam as well. *See* P000875.

Therefore, given the above summary of facts and opinions to which Dr. Obeng is expected to testify to at trial, the subject matter on which Dr. Obeng is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

d.   **Dr. Jamal M. Bullocks, M.D.,** 5001 East Sam Houston Parkway S, Pasadena, TX 77505, (713) 442-7100

Dr. Bullocks is a plastic surgeon at the Kelsey Seybold Clinic who treated the Plaintiff on or around January 4, 2019. *See* P000876. During which, the Plaintiff's chief complaint to Dr. Bullocks was a right orbital fracture. *See* P000876. With that, Dr. Bullocks opined and diagnosis the Plaintiff with a closed fracture of the right orbit and of the orbit. P000876.

Thus, the reason for the Plaintiff's visit to Dr. Bullocks was orbital pain on the right side. *See* P000878. In the Plaintiff's history, Dr. Bullocks opined that that a few things were important. *See* P000878. Among them was that the Plaintiff had suffered blunt trauma to the face on December 28, 2018 in an assault by the police. *See* P000878. After which, the Plaintiff was seen

at Bayshore and diagnosed with an orbital fracture of the right eye and then transferred to Ben Taub hospital on December 28, 2018.  *See* P000878. There at, the Plaintiff was tentatively scheduled for surgery but it was cancelled because his eye was too swollen for it.  *See* P000878.  Thereafter, the Plaintiff went the Kelsey Seybold clinic where he presented to Dr. Gina Obeng for the facial fracture who then referred the Plaintiff to Dr. Bullock. *See* P000878.

During which, to Dr. Bullock, the Plaintiff reported that he had double vision which presents itself when he looks in an upgazed.  *See* P000878.  In addition, the Plaintiff reported to Dr. Bullocks that he still had significant pain.  *See* P000878.  To which, Bullocks was of the opinion that that the Plaintiff was in so much Plaintiff that he prescribed to the Plaintiff 120 tablets of Tramadol HCI 50 MG.  *See* P000877.

In addition, Dr. Bullocks was also of the medical opinion that the Plaintiff needed a physical exam.  *See* P000882.  From it and the Plaintiff's medical history, Dr. Bullocks opined that the Plaintiff was suffering from four things of note and importance.  *See* P000882.  The first was a right orbital edema. *See* P000882.  The second was severe scleral injections.  *See* P000882.  The third was periorbital abrasions.  *See* P000882.  The fourth was diplopia on upward gaze.  *See* P000882.

From that, Dr. Bullocks opined and assessed that the Plaintiff was suffering from orbita trauma and orbital fracture.  *See* P000882.  However, Dr. Bullocks noted that the Plaintiff still had significant ocular and orbital inflammation.  *See* P000882.  Moreover, Dr. Bullocks noted that the questionable entrapment, diplopia may be related to edema.  *See* P000882. To which, Dr. Bullocks opined that, if entrapment was present at the time of the injury, it may now be permanent due to the late presentation.  *See* P000882.  Therefore, Dr. Bullocks was of the opinion that further imaging was needed to make a better assessment.  *See* P000882.

Thus, Dr. Bullocks authorized a CT Face without contrast image.  *See* P000883.  For which the diagnosis was a closed fracture of the right orbit upon initial encounter.    *See* P000883.    When completed, it was acknowledged by Dr. Bullocks on January 15, 2019.  *See* P000885.

Therein, it was found and opined that there was, first, a fracture of the inferior wall of the right orbit with minimal herniation of orbital fat.  *See* P000885.  Second, that there was also near complete opacification of the right maxillary sinus likely representing hemorrhage as well as opacification of the right ostimeatal complex.  *See* P000885.  Third, there was a fracture of the medial wall of the right orbit with herniation of orbital fat.  *See* P000885.  Fourth, there was opacification of a few right ethmoid

air cells.  *See* P000885.  Fifth, that there was mucosal thickening of the left maxillary sinus.

From that, the following medical opinions and impressions were arrived at. *See* P000885.  The first such opinion was that there were fractures of the medial and inferior walls of the right orbit with herniation of orbital fact. *See* P000885.  The second was that there was near complete opacification of the right maxillary sinus.  *See* P000885.

Therefore, given the above summary of facts and opinions to which Dr. Bullocks is expected to testify to at trial, the subject matter on which Dr. Bullocks is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

e.      **Dr. Zahir K. Javeri, M.D.,** 5001 East Sam Houston Parkway S, Pasadena, TX 77505, (713) 442-7100

Dr. Javeri is a radiologist at the Kelsey Seybold Clinic who resulted the Plaintiff's face CT scan.  *See* P000885.

Therein, Dr. Javeri opined and found that there was, first, a fracture of the inferior wall of the right orbit with minimal herniation of orbital fat.  *See* P000885.  Second, Dr. Javeri  opined and found there was also near complete opacification of the right maxillary sinus likely representing hemorrhage as well as opacification of the right ostimeatal complex.  *See* P000885.  Third, Dr. Javeri  opined and found that there was a fracture of the medial wall of the right orbit with herniation of orbital fat.  *See* P000885. Fourth, Dr. Javeri  opined and found  that there was opacification of a few right ethmoid air cells.  *See* P000885.  Fifth, Dr. Javeri  opined and found that there was mucosal thickening of the left maxillary sinus.

From that, the following medical opinions and impressions were arrived at by Dr. Javeri. *See* P000885.  The first such opinion was that there were fractures of the medial and inferior walls of the right orbit with herniation of orbital fact.  *See* P000885.  The second was that there was near complete opacification of the right maxillary sinus.  *See* P000885.

Therefore, given the above summary of facts and opinions to which Dr. Javeri is expected to testify to at trial, the subject matter on which Dr. Javeri is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

f.      **Dr. Charlene H. Crockett, M.D.,** 5001 East Sam Houston Parkway S, Pasadena, TX 77505, (713) 442-7100

Dr. Crockett is doctor in the ophthalmology department at the Kelsey Seybold clinic who treated the Plaintiff on or around January 9, 2019. *See* P000889. The reason for this visit was a followed, and during it, Dr. Crockett opined and diagnosed the Plaintiff with two things. *See* P000889. The first was diplopia and the second was a blow-out fracture. *See* P000889.

Those opinions were arrived at by way of the Plaintiff reporting that he still has pain in this right eye every day. *See* P000891. Given so, Dr. Crockett opined and assessed that the plaintiff was primarily suffering a right orbital floor fracture. *See* P000891. To which, Dr. Crockett noted that it was the result of blunt trauma to the face that occurring on or around December 28, 2018. *See* P000891. That the Plaintiff should refrain from blowing his nose, and that a return for strabismus exam may be needed. *See* P000891.

These opinions were arrived at by way of Dr. Crockett meeting with the Plaintiff who was there for a follow-up motility evaluation that day. *See* P000891. This, after, as Dr. Crockett notes that the Plaintiff was previously seen by Dr. Bullocks on last Friday who had ordered a CT scan. *See* P000891. To which, Dr. Crockett discussed that CT with the Plaintiff. *See* P000891. And from which, Dr. Crockett was of the opinion that the Plaintiff needed plastic surgery and CHC follow-up. *See* P000891.

In any case, a few ophthalmology exams were performed. *See* P000892-P000893. The first was a base eye exam, the second was a strabismus exam, and the third was a slit lamp and fundus exam. *See* P000892- P000893.

Therefore, given the above summary of facts and opinions to which Dr. Crockett is expected to testify to at trial, the subject matter on which Dr. Crockett is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

5)   **TOWNSEN MEMORIAL HOSPITAL**, 1475 F.M. 1960 Bypass Road East, Humble, TX 77338, (281) 369-9001

**BUCZEK AND KOBZA, PLLC**, 101 Vision Park Boulevard, Conroe, TX 77384, T: (281) 363-2829

a.   **Dr. Ronald A. Buczek, D.O.**, 1475 F.M. 1960 Bypass Road East, Humble, TX 77338, (281) 369-9001, and alternatively, 101 Vision Park Boulevard, Conroe, TX 77384, T: (281) 363-2829.

Dr. Buczek is medical doctor and surgeon with Buczek and Kobza, PLLC who also has privileges at Townsen Memorial Hospital at which he treated the Plaintiff for injuries he sustained on the date of the incident. In addition,

he is a named partner of the PLLC Buczek and Kobza, PLLC which also treated the Plaintiff for his injuries sustained as a result of the incident.

To be exact, on or around February 28, 2019, the Plaintiff visited Dr. Buzek at his office and reported that he was experiencing right facial pain and vision change. *See* P001275; P001298. That it was the result of being assaulted by police on or around December 27, 2018. *See* P001275; P001298. That he was experiencing a 5/10 pain level at all times with blurry double vision. *See* P001275; P001298. And, that for it, the Plaintiff had previously gone to Bayshore Hospital where imaging was performed on his face. *See* P001275; P001298

Upon reviewing said documentation, Dr. Buczek opined that the CR Scan report of the face indicates an O.D. orbital blowout fracture that involves the floor and lamina, with mild herniation of orbital fat into the fracture defect. *See* P001276. In addition, there was intermittent O.D. IR caught within the Defect. *See* P001276. Given so, Dr. Buczek assessed that there was an O.D. Inferior Orbital Floor Fracture Defect present. *See* P001276.

With that in mind, Dr. Buzek opined that the Plaintiff required surgical intervention for O.D. Orbital floor fracture repair with plate and screw fixation. *See* P001276. Thereafter, on or around May 2, 2019, Dr. Buzek performed that surgery at Townsen Memorial Hospital. *See* P001172.

To which, Dr. Buczek opined and had the preoperative diagnosis that the Plaintiff was suffering from a right eye orbital floor fracture. *See* P001194; P001257. Given so, Dr. Buczek was of the opinion that the following medical procedures would need to be performed upon the Plaintiff:

1. Exploration of the right orbital floor fracture via transconjunctival incision;
2. Removal of trapdoor fracture fragments;
3. Injection with epinephrine to the orbital rim;
4. Placement of small stryker titanium fan plate with two self-tapping orbital rim screws and simple closure of the transconjunctival incision with 8-0 chromic

*See* P001194; P001257

Dr. Buczek arrived at the opinion of the medical necessity for the above referenced procedures by way of preoperatively meeting with the Plaintiff. *See* P001195; P001258. The indication for such a procedure being necessary was that the Plaintiff had suffered direct trauma to the eye. *See* P001195; P001258. During which, the Plaintiff developed an orbital floor fracture and was having some visual changes. *See* P001195; P001258.

Thus, Dr. Buczek was of the opinion that the Plaintiff would benefit from a titanium plate and screw fixation, and so it was pursued.  *See*  P001195 P001258.  During which, Dr. Buczek was of the opinion that the Plaintiff needed anesthesia so a service team came and provided it.  *See* P001195 P001258.  Moreover, Dr. Buczek was also of the opinion that general endotracheal intubation was also need, and so it was performed.  *See* P001195; P001258

Given so, Dr. Buczek's attention turned to the right eye.  *See* P001195; P001258.  During which, two stay stiches, one to the inferior eyelid and one to the superior eyelid were then placed in a standard fashion elevating them up to provide adequate exposure to the orbit.  *See* P001195; P001258.  Thereafter, 3 mL of lidocaine with epinephrine were injected to the orbital rim and at that point, with the use of a needle tip Boyle cauterized, Dr. Buczek was able to incise the area appropriately at that point, via a transconjunctival incision with the use of a freer and periosteal elevator, Dr. Buczek was able to open up to the floor of the orbit.  *See* P001195-P001196; P001258-P001259.

After which, Dr. Buczek was able to move the entire globe medially and superior towards the nose and at that point, Dr. Buczek saw the 1 cm x 8mm orbital floor fracture directly distal to the orbital rim.  *See* P001196; P001259.  Following probing of the area, Dr. Buczek was able to remove some of the entrapped orbital fat and on further probing, there were several trapdoor fragments that were removed as well in standard fashion.  *See* P001196; P001259.

Thereafter, preoperatively, a force duction test was provided as well as postoperatively with moving of the globe in all six cardinal fields of gaze.  *See* P001196; P001259.  Moreover, a small Stryker titanium plate was brought up into the field and fashioned accordingly covering the orbital floor fracture and two self-tapping 3 mm screw were then placed down in standard fashion.  *See* P001196; P001259.  Thereafter, the globe was then turned back to its normal anatomic position, and the entire eye was washed out.  *See* P001196; P001259.

Subsequently, Dr. Buczek was of the opinion that the transconjunctival incision needed to be closed, and then he so did so with multiple chromic throws.  *See* P001196; P001259.  Thereafter, Dr. Buczek was of the opinion that a force duction tested was needed, and he so performed one.  *See* P001196; P001259.  Finally an eye patch was placed over the Plaintiff's face, and the anesthesia was discontinued.  *See* P001196; P001259.

On or around May 9, 2019, the Plaintiff returned to see Dr. Buczek for a post operation visit in which he reported to Dr. Buczek experiencing 6/10 pain with irritation of his right eye.  *See* P001271; P001294.   Thus, Dr.

32

Buczek was of the opinion that the Plaintiff needed a physical exam. *See* P001274. During which, Dr. Buczek opinioned that the O.D. appears with diffuse global vessel injection. *See* P001274. And, that there was occasional blurry vision at the O.D. *See* P001274; P001294. Thus, Dr. Buczek discussed surgical procedure with the Plaintiff in full detail, and he was advised to avoid lakes, pools, baths, and hot tubs and to follow up in two weeks. *See* P001274; P001294.

On or around May 23, 2019, the Plaintiff then again returned to see Dr. Buczek for a post operation second visit. *See* P001266; P001289. During which, the Plaintiff's chief complaint to Dr. Buczek was that he constantly felt a 7.5 out of 10 pain level, and the sensation of hardware popping out with any ROM. *See* P001266; P001289. Thus, Dr. Buczek was of the opinion that the Plaintiff needed a physical exam. *See* P001270.

During said exam, Dr. Buczek opined that he could slightly appreciate the two self-tapping orbital floor screws placed into the O.D. orbital rim. *See* P001270. And, that the Plaintiff did report intermittent pain referable to the O.D. *See* P001269. Thus, Dr. Buczek was of the opinion that the Plaintiff should keep the area clean and dry at all times, to avoid touching the O.D. with hands, and that a follow-up would be needed in three weeks. *See* P001270; P001289.

Moreover, Dr. Buczek also assessed that the Plaintiff did offer some eye pain late in the day but offered that he was 95% overall improved. *See* P001266. Thus, Dr. Buczek opined that the Plaintiff had healed as anticipated, and therefore, Dr. Buczek discharged him from his care. *See* P001266*.*

On or around June 20, 2019, the Plaintiff again returned to see the Dr. Buczek. *See* P001262; P001284. During which, the Plaintiff reported to Dr. Buczek slight blurry vision. *See* P001262; P001284. From that encounter, Dr. Buczek opined that the incisions were healing well, and noted that the Plaintiff's pain was improving. *See* P001265; P001284.

Nonetheless, Dr. Buczek was of the opinion that the Plaintiff needed a physical exam, during which Dr. Buczek noted that all cardinal fields of gaze were intact and that there was no real pain with manual palpitation at the orbital rim screw location at that time. *See* P001265. Moreover, there was a mid-conjunctival hyperemia noted. *See* P001265.

Therefore, given the above summary of facts and opinions to which Dr. Buzcek is expected to testify to at trial, the subject matter on which Dr. Buzcek is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

6)   **GREATER HOUSTON PSYCHIATRIC ASSOCIATES, PLLC**, 11550 Fuqua
Street, Suite 560, Houston, TX 77034, T: (281) 922-7333

a.   **Dr. Elizabeth Hedden, M.D.**, 11550 Fuqua Street, Suite 560, Houston, TX
77034, T: (281) 922-7333

On or around January 22, 2019, the Plaintiff visited with his psychiatrist,
Dr. Hedden.  *See* P001347.  During which the Plaintiff reported that, on
December 27, 2018, he was at a Denny's restaurant.  *See* P001349.  After
he had left, he called the Denny's back feeling bad for his behavior and
asked to talk to the manager, and was told that if he came back to make
arrangements to pay for the damages the police would not be called.  *See*
P001349.

When he returned the police were there waiting for him, and they "drug him
out of the car hitting him and continued to beat him up before they hand
cuffed him and called an ambulance."  *See* P001349.  Thereafter, Dr.
Hedden was told that the Plaintiff was then taken to Bayshore Hospital and
later transferred to Ben Taub for his multiple injuries.  *See* P001349.

From that, Dr. Hedden opined and diagnosis that the Plaintiff was suffering
from PTSD after the assault.  *See* P001350.  Thus, Dr. Hedden determined
that the Plaintiff should be prescribed 50 mg of Lyrica which he needed to
take three times a day.  *See* P001350.

On or around January 29, 2019, the Plaintiff again went to visit Dr. Hedden.
*See* P001351.  At that time, Dr. Hedden noted that it was four weeks since
the Pasadena Police had assaulted the Plaintiff and broken his orbital bone
and ribs.  *See* P001351.  In light of that, the Dr. Hedden observed that the
Plaintiff has been extremely anxious ever since.  *See* P001351.  That every
time he sees a cop, he is terrified.  *See* P001351.  In addition, the Plaintiff
has nightmares about the assault, and in those nightmares he dies from the
police assault in his dreams.  *See* P001351.

Given so, Dr. Hedden opined that this resulting anxiety leads the Plaintiff
to have anger and outburst.  *See* P001351.  That the Plaintiff cries every
day.  *See* P001351.  Despite the assaulted by the police, the Plaintiff has
managed to maintain his two years of sobriety.  *See* P001351.  As such, Dr.
Hedden further opined and diagnosed the Plaintiff with suffering from acute
post-traumatic stress disorder.  *See* P001352.

Importantly, Dr. Hedden opined and observed that the Plaintiff's progress
has suffered a "marked decline after [the] assault" by the police.  *See*
P001353.  With that in mind, Dr. Hedden was of the opinion and plan that
the Plaintiff needed to add 50 mg Lyrica tid, continue his other medications,

and revisit with her in three weeks.  *See* P001353.

On or around February 28, 2019, the Plaintiff again went to see Dr. Hedden. *See* P001364.  During which, the Plaintiff noted that when he gets around police and the same police officers he gets extremely anxious.  *See* P001364.  That the Lyrica does not seem to help.  *See* P001364. Nonetheless, the Plaintiff has started a Go Fund Me Page in an effort to have his tattoos removed as they do not reflect who he is inside anymore and because they get unwanted police attention.  *See* P001364.

In any case, Dr. Hedden opined that the Plaintiff behavior and functioning was on edge.  *See* P001364.  Thus, she maintained her opinion and diagnosis that the Plaintiff was suffering from acute post-traumatic stress disorder. *See* P001365.  And, opinioned that the Plaintiff was making no progress. *See* P001366.  Thus, Dr. Hedden was of the opinion that the Plaintiff needed to increase his Lyrica intake to 100 mg, continue his other medications, and revisit with her in one month.  *See* P001366. Specifically, Dr. Hedden was of the opinion the Lyrica needed to be taken three times a day.  *See* P001367.

On or around March 18, 2019, the Plaintiff again went to see Dr. Hedden. *See* P001372.  During which, the Plaintiff reported that he had been having suicidal thinking over the last few months.  *See* P001372.  That to deal with his pain, he got drunk off a Jaeger recently.  *See* P001372.  And, that despite the Lyrica, that the Plaintiff was still crying every day.  *See* P001372.

Given so, Dr. Hedden maintained her opinion and diagnosis that the Plaintiff was suffering from acute post-traumatic stress disorder.  *See* P001374.  Thus, Dr. Hedden's plan was to decrease the Latuda to 60 mg, vrylar titrate to 3 mg, continue all other medications.  *See* P001374.  The Plaintiff thereafter would attempt suicide a few times.

On May 6, 2019, the Plaintiff again met with Dr. Hedden.  *See* P001383. During which, the Plaintiff reported that he had just had eye surgery and his orbit was rebuilt with metal plates which meant that the Plaintiff was in a lot of physical pain.  *See* P001383.  In addition, the Plaintiff noted to Dr. Hedden that, when he sees police, he becomes exceedingly anxious and panicky.  *See* P001383.  Thus, Dr. Hedden maintained her diagnosis and opinion of post-dramatic stress disorder. *See* P001384.  And, the plan for the Plaintiff was for him to continue his meds and then revisit with her in two months.  *See* P001385.

On July 1, 2019, the Plaintiff again visited with Dr. Hedden.  *See* P001387. During which, he reported that he had reconstructive eye surgery, and that it was healed well.  *See* P001387.  Nonetheless, the Plaintiff reported that he still gets very anxious around police, and so takes extra buspirone.  *See* P001387.  Given so, Dr. Hedden was of the opinion and diagnosis that the

35

Plaintiff continues to suffer from post-traumatic stress disorder.  *See* P001388.

Therefore, given the above summary of facts and opinions to which Dr. Hedden is expected to testify to at trial, the subject matter on which Dr. Hedden is expected to testify in regards to the above-referenced medical treatment of the Plaintiff following the incident made the basis of this lawsuit.

**C.    ATTORNEY'S FEES EXPERT (i.e. 42 U.S.C. § 1988(B))**

**M. Obaid Shariff**
The Shariff Law Firm, PLLC
2500 West Loop S, Suite 300
Houston, TX 77027
(713) 244-8392 Telephone
(713) 244-8372 Facsimile

**Subject matter:**

It is anticipated that Mr. Shariff will testify regarding the reasonable and necessary attorneys' fees incurred by the parties to this litigation.  A copy of his resume will be supplemented, if necessary.

**General substance of the expert's mental impressions and opinions:**

This expert is expected to have reviewed all past and future pleadings, motions, orders, and other materials filed in this suit along with the documentation associated with the efforts of the parties.  The expert is familiar with the average and reasonable attorneys' fees charged by attorneys in Harris County, Texas for claims of this size, type, and complexity.  To date, the various efforts expended in prosecuting and defending the claims by parties are generally reflected in the pleadings, motions, discovery, orders and other instruments filed with the court in this litigation.

Each of the forgoing non-retained experts will provide testimony concerning their respective area and/or subject based on their education, training, experience in providing medical and diagnostic treatment and services to the Plaintiff. Each of the above designated non-retained

experts will have access to and may rely on their medical records and results of any diagnostic procedures in preparation for and during their testimony.

To the extent any testimony offered by witnesses may be considered opinion testimony or is categorized as opinion testimony by non-retained experts as contemplated by the Federal Rules of Evidence, Plaintiff hereby designates all the non-retained experts identified above. Further, Plaintiff will supplement copies of the Affidavits for billing and medical records for the above identified treating providers and/or diagnostic facilities to the extent they have not already been produced.

Plaintiff reserves the right to call to testify or question any and all experts or party representatives who have been or who may be designated by or called by any other party to this lawsuit, should it become necessary to do so.

Plaintiff expressly reserves the right to withdraw the designations of any expert and to aver positively that any such previously designated expert will not be called as a witness at trial and to re-designate same as a consulting expert only, who cannot be called or deposed by the Defendants or any other party.

Since Plaintiff expressly reserves the right to supplement this Designation of Expert Witnesses and produce any supplemental billing and medical records of treating physicians or diagnostic facilities and/or expert reports of retained experts after the depositions of the Defendant's experts have been taken, if any.

**[Signature Block on Following Page]**

Respectfully submitted,

**THE SHARIFF LAW FIRM**

By: _____
    M. Obaid Shariff
    Federal I.D. No. 2827312
    Texas Bar No. 24091135
    2500 West Loop South, Ste 300
    Houston, Texas 77027
    (713) 244-8392 (Telephone)
    (713) 244-8372 (Fax)
    mshariff@sharifflawfirm.com
    **ELECTRONIC SERVICE VIA:**
    eservice@sharifflawfirm.com

    Anthony Ray Smith
    Texas Bar No. 24093167
    The Law Office of Anthony Ray Smith, PLLC.
    2616 South Loop West, Suite 218
    Houston, TX 77054
    (713) 242-8917 (Telephone)
    (713) 583-2421 (Fax)
    asmith@arsmithlawoffice.com

    **ATTORNEYS FOR PLAINTIFF**
    **NICHOLAS HECKFORD**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Plaintiff's Third Amended and Supplemental Designation and Disclosure of Experts was forwarded to the following counsel of record in this cause via ECF and/or other means, as required by the Federal Rule of Civil Procedure on this 8th day of June 2022.

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

**William S. Helfand**
Bill.Helfand@lewisbrisbois.com
**Norman Ray Giles**
Norman.Giles@lewisbrisbois.com
**Bridget Davidson**
Bridget.Davidson@lewisbrisbois.com
24 Greenway Plaza, Suite 1400
Houston, TX 77046
Ph: (713) 659-6797
Fax: (713) 759-6830

**Attorneys for Defendants**

By: _____
    M. Obaid Shariff
    **Attorney for Plaintiff Nicholas**
    **Heckford**